EAGLE PROPERTIES, LTD. et
al., Petitioners,

v.

Clarence SCHARBAUER, Jr. et
al., Respondents.

No. C–8203.

Supreme Court of Texas.

Dec. 19, 1990.

Opinion Delivered March 27, 1991.

James E. Ingram, San Antonio, and Clinard J. Hanby and W. James Kronzer, Houston, for petitioners.

James W. Paulsen, Houston, John H. McElhaney, Morris Harrell, Donald Colleluori and Bruce A. Budner, Dallas, John E. O'Neill and David T. Hedges, Houston, W.B. Browder, Jr., Midland, David C. Holmes, Houston, and Michael V. Powell, Dallas, for respondents.

## OPINION

COOK, Justice.

This court's opinion of December 19, 1990, is withdrawn and the following is

substituted in its place. Petitioners' and Respondents' motions for rehearing are overruled.

This is a single cause which originated from two related cases. The first case presents us with the question of whether the doctrines of res judicata and collateral estoppel preclude a state action following the settlement of a federal court case that involved different parties but the same subject matter. The second case presents similar questions of res judicata and collateral estoppel but also addresses whether the statute of limitations for causes of action in fraud is two years or four years. We hold that the statute of limitations does not bar the claims for fraud in the second case, that res judicata does not bar the claims in either case, and that collateral estoppel bars only some of the claims presented in both cases. Therefore, we reverse the judgment of the court of appeals in part and affirm in part, 758 S.W.2d 911, and remand this cause to the court of appeals for further consideration of whether Branum's claims other than fraud against TCB, First Republic, and Peat Marwick are barred by the relevant statutes of limitations.

In 1982, First National Bank of Midland (First Midland) was experiencing financial problems due to a large portfolio of energy-related loans. To improve the financial position of First Midland, Eagle Properties, Ltd., was formed to purchase First Midland's twenty-four story office building, ten-story parking garage, and drive-in banking facilities for $75 million. M.W. Branum and Thomas C. Brown were the general partners of Eagle. Charles Fraser, the president and chairman of the board of First Midland, hand-picked the Eagle partners and solicited their participation. The consideration consisted of $25 million in unsecured promissory notes from Eagle and two unfunded letters of credit, each for $25 million, provided by Texas Commerce Bank (TCB) and InterFirst Bank Dallas. Eagle agreed to lease the premises back to First Midland for three years and to allow First Midland to manage the properties.

The financial condition of First Midland continued to deteriorate, and in June 1983 Eagle agreed to the funding of the letters of credit six months before they were scheduled to be funded. On October 14, 1983, First Midland was declared insolvent, and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. The FDIC accelerated payment on the notes and filed suit in federal court in February 1984 to collect on them. Eagle counterclaimed for declaratory judgment on grounds of common law fraud, violations of the Securities Exchange Act, failure of consideration, violations of the Bank Holding Company Act, and the operation of two subordination agreements. In a non-jury trial, the federal court held for the FDIC. In particular, the federal court held that First Midland did not fraudulently induce Eagle to enter into the transaction, execute the promissory notes, or agree to the early funding of the letters of credit. *FDIC v. Eagle Properties, Ltd.*, 664 F.Supp. 1027 (W.D.Tex.1985).

Eagle filed an appeal to the United States Court of Appeals for the Fifth Circuit. While the case was on appeal, the parties entered into a settlement agreement which explicitly preserved Eagle's right to file claims against the officers and directors of First Midland. The settlement did not call for the judgment of the trial court to be vacated. At one point during the negotiations, however, Eagle offered the FDIC an additional one million dollars in settlement if it would move the Fifth Circuit to reverse or vacate and remand the judgment of the district court for a take-nothing judgment, and if these events in fact occurred. The FDIC declined this offer.

Subsequent to the settlement agreement, two suits were filed in state court. In the first suit, *Eagle Properties, Ltd. v. Mays*, Eagle and the individual partners sued certain officers and directors of First Midland (the Directors), alleging common law and statutory fraud, violations of the Deceptive Trade Practices Act, and negligence/breach of fiduciary duties. The second suit, *Branum v. Scharbauer*, was originally filed by M.W. Branum alone, but

Eagle and the remaining partners, except Thomas C. Brown, subsequently intervened as additional plaintiffs. This suit was brought against the Directors, TCB, Inter-First Bank Dallas (now First Republic Dallas), and Main Hurdman (now Peat Marwick). The suit alleged common law and statutory fraud and violations of the Deceptive Trade Practices Act against all defendants, breach of contract/promissory estoppel against TCB and InterFirst, and negligence by TCB, InterFirst (hereinafter "First Republic"), and Main Hurdman (hereinafter "Peat Marwick").

Each of the defendants moved for summary judgment in the trial court, with the exception of two of the Directors, Joel T. Mays and John P. Butler. The trial court consolidated the two causes, and severed plaintiffs' claims against Joel T. Mays and John P. Butler, the claims between Thomas C. Brown and the other plaintiffs, and the counterclaims filed by some of the Directors, TCB, and First Republic. These claims were made the subject of a separate action, *Eagle Properties, Ltd. v. Fraser*. The trial court then entered final judgment with respect to the remaining claims in favor of the Directors, TCB, First Republic, and Peat Marwick. The summary judgment in *Mays* was based upon res judicata, collateral estoppel, and plaintiffs' lack of standing to bring the negligent mismanagement claims. The summary judgment in *Branum* was based on res judicata, collateral estoppel, and the relevant statute of limitations.

Eagle Properties and its two general partners, Branum and Brown, appealed from the judgment of the trial court. The court of appeals affirmed the judgment of the trial court.

Petitioners challenge the judgment of the court of appeals and the trial court's granting of both summary judgments. We agree in part with petitioners' contentions, and we reverse the judgment of the court of appeals in part, affirm in part, and re-mand to the court of appeals for further consideration of whether Branum's claims other than fraud against TCB, First Republic, and Peat Marwick are barred by the relevant statutes of limitations.

Res Judicata

■■■ We begin with the issue of res judicata with respect to both Eagle's suit and Branum's suit. Since the first suit, *FDIC v. Eagle*, was decided in federal court, federal law controls the determination of whether res judicata will bar a later state court proceeding. *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 715 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex.1985). Under federal law, the doctrine of res judicata will apply if: (1) the parties are identical in both suits;[1] (2) the prior judgment is rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved in both cases. *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983). As a general rule, when a cause of action is brought in federal court and there is no jurisdictional obstacle to advancing claims arising from both federal and state law, and only federal claims are asserted, the state claims cannot be brought in a subsequent cause of action in state court. The subsequent action based on the state claims will not be precluded, however, if the federal court did not possess jurisdiction over the omitted state claims or, having jurisdiction, would clearly have declined to exercise that jurisdiction as a matter of discretion. *Jeanes*, 688 S.W.2d at 104. *Restatement (Second) of Judgments* § 25, comment (e) (1982).

There is no independent basis of federal jurisdiction over the state court causes of action brought by Eagle and Branum. These claims do not give rise to federal question jurisdiction, and diversity of citizenship did not exist between Eagle's part-

---

1. We note, however, that the "identity of parties" rule has seen significant erosion in the federal courts in recent years. In most jurisdictions today, the requirement only applies to the party against whom the effect of the prior judgment is being asserted. 1B *Moore's Federal Practice* ¶ 0.441[1] (1988).

ners and the Directors, TCB, InterFirst and Main Hurdman as required by 28 U.S.C. § 1332(a)(1).[2] Therefore, the federal court in *FDIC v. Eagle* could have decided the state law claims brought by Eagle and Branum in *Mays* and *Branum* only if those claims fell within the court's ancillary or pendent-party jurisdiction.[3]

Last year, in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the U.S. Supreme Court enunciated the test for determining the existence of pendent-party jurisdiction, that is, "jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley*, 109 S.Ct. at 2006. Where such jurisdiction is sought, it is not sufficient that the federal and nonfederal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding," as required for pendent claim jurisdiction under *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *Finley*, 109 S.Ct. at 2006–07. Rather, there must also be "an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim." *Finley*, 109 S.Ct. at 2007, *quoting Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978).

■ The U.S. Supreme Court held in *Finley* that the Federal Tort Claims Act does not permit the exercise of pendent-party jurisdiction over additional parties to whom no independent basis for federal jurisdiction exists. The Court found that the most significant element of "posture" was the fact that the added claims involved added parties over whom there was no independent basis for jurisdiction. The Court then read the jurisdiction statute narrowly and found that it did not permit the exercise of jurisdiction over actions against parties other than the United States. The Court emphasized the rule expressed in precedent that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Finley*, 109 S.Ct. at 2010. Therefore, pendent-party jurisdiction may not be exercised unless the text of a jurisdiction statute explicitly grants, or manifests an intent to grant, jurisdiction over additional parties.

■ Since *Finley*, the trend among federal courts has been to read jurisdiction-granting statutes narrowly, which has frequently resulted in finding a lack of pen-

---

**2.** Diversity must have existed at the time the federal action was commenced to confer jurisdiction upon the federal court. *Koenigsberger v. Richmond Silver Mining Co.*, 158 U.S. 41, 49–50, 15 S.Ct. 751, 755, 39 L.Ed. 889 (1895).

**3.** Ancillary jurisdiction generally involves claims asserted defensively, i.e., "claims by a defending party hailed into court against his will," or by a party "whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1987); *W.R. Grace & Co. v. Continental Cas. Co.*, 896 F.2d 865, 871 (5th Cir.1990). Pendent-party jurisdiction represents an amalgamation of pendent-claim jurisdiction and ancillary jurisdiction, and involves jurisdiction over parties not named in claims properly before the federal court and over whom there is no independent basis of federal jurisdiction. Note, *Pendent Party Jurisdiction After Finley v. United States: A Trend Toward Its Abolition*, 24 Ga.L.Rev. 447, 453–54 (1990); A. Miller, *Ancillary and Pendent Jurisdiction*, 26 S.Tex.L.J. 1, 5–11 (1985). The U.S. Supreme Court has failed to definitively distinguish between pendent-party jurisdiction and ancillary jurisdiction. D. Roth, *Finley v. United States: Is Pendent Party Jurisdiction Still A Valid Doctrine?*, 39 Am.U.L.Rev. 811, 813, 837–38. Circuit courts have also balked at deciding whether any "principled differences" exist between pendent and ancillary jurisdiction. *See King Fisher Marine Serv. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1159 n. 3 (10th Cir.1990). Likewise, we find it unnecessary to resolve this question for the purposes of this case. The state law claims of defendants Eagle Properties and Branum against the Directors, TCB, InterFirst and Main Hurdman might have been ancillary, but since they would have necessitated jurisdiction over new parties not named in any claim independently cognizable by the federal court, we will consider the question raised as one involving pendent-party jurisdiction. *See Finley v. U.S.*, 490 U.S. 545, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989); *Federal Deposit Ins. Corp. v. Israel*, 739 F.Supp. 1411, 1412 (C.D.Cal.1990).

dent-party jurisdiction.[4] It has even been suggested that pendent-party jurisdiction is no longer a viable concept in any context. *See Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 643 n. 5 (2d Cir.1989).

Since there is no independent basis of federal jurisdiction over the state court causes of action brought by Eagle and Branum, we must examine the governing jurisdiction statute, 12 U.S.C. § 1819, and determine whether this statute affirmatively grants federal jurisdiction over Eagle and Branum's state law claims. In 1985, this statute provided in relevant part:

> All suits of a civil nature at common law or in equity to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy.

12 U.S.C. § 1819 (Fourth) (1988).

The U.S. district court in *Federal Deposit Ins. Corp. v. Israel,* 739 F.Supp. 1411, 1413 (C.D.Cal.1990), interpreted nearly identical language in the current version of 12 U.S.C. § 1819, which reads in part,

> Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.

12 U.S.C.A. § 1819(b)(2) (West 1989). In that case, the FDIC was the plaintiff and certain defendants filed cross-claims against new parties which were exclusively state-law claims for indemnification. Ap-

plying *Finley,* the court squarely addressed the question of whether 12 U.S.C. § 1819 affirmatively grants jurisdiction over cross-claims of this nature, permitting the federal court to adjudicate those claims on the merits. After carefully examining the language of the statute and federal decisions interpreting other jurisdiction statutes, the court held that the terms "civil actions" or "civil suits" refer to specific claims, not just "the general theme of the suit." *Israel,* 739 F.Supp. at 1414. Therefore, 12 U.S.C. § 1819 explicitly grants jurisdiction only over *claims to which the FDIC is a party.* The court concluded that it had no subject matter jurisdiction over the defendants' third-party claims. The court found its decision consistent with the canon that a Congressional grant of jurisdiction should be read narrowly. *Id.* at 1413–14.[5]

In a similar case involving the FSLIC, the Ninth Circuit Court found that jurisdiction existed over a third-party complaint. In *California Union Ins. v. American Diversified Sav.,* 914 F.2d 1271 (9th Cir.1990), the FSLIC brought claims against directors of a collapsed thrift institution. One of the directors filed a third-party complaint against an insurer. The court found that 12 U.S.C. § 1730(k)(1) granted jurisdiction over the third-party claim. This differs from the present case in two respects. First, 12 U.S.C. § 1730(k)(1) contains broader language than 12 U.S.C. § 1819, referring to "any civil action, suit, *or proceeding* to which the [FSLIC] shall be a party" (emphasis added), as opposed to "all suits ... to which the FDIC shall be a party."

---

**4.** *See, e.g., Iron Workers Pension Fund v. Terotechnology,* 891 F.2d 548 (5th Cir.1990) (examining the Employee Retirement Income Security Act, 29 U.S.C. § 1132(e)); *Stallworth v. City of Cleveland,* 893 F.2d 830 (6th Cir.1990) (examining 42 U.S.C. § 1983); *Lockard v. Missouri Pacific R.R.,* 894 F.2d 299 (8th Cir.1990) (examining the Federal Employers' Liability Act, 45 U.S.C. § 56); *Flynn v. U.S.,* 902 F.2d 1524 (10th Cir.1990) (examining the Federal Tort Claims Act, 28 U.S.C. § 1346(b)). *Cf. Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292 (2d Cir.1990) (finding pendent party jurisdiction available in admiralty cases, examining 28 U.S.C. § 1333(1)).

**5.** *See also Federal Deposit Ins. Corp. v. Ohara's, Inc.,* 713 F.Supp. 966 (N.D.Miss.1989) (holding

that in a suit brought by the FDIC in its corporate capacity, no pendent party jurisdiction can be exercised against the FDIC in its capacity as receiver for a state bank, because 12 U.S.C. § 1819 specifically excludes the FDIC as receiver from the exercise of subject matter jurisdiction in suits which involve only the rights or obligations of depositors, creditors, stockholders and the state bank under state law; *Fair v. NCNB Texas Nat'l Bank,* 733 F.Supp. 1099 (N.D. Tex.1990) (holding that the court would not exercise its ancillary or pendent-party jurisdiction because such would not serve the interests of judicial economy and convenience). Neither of these cases relies upon *Finley,* however.

Second, the court in *California Union* based its decision in part on the fact that the FSLIC had a "clear stake" in the director's claim against the insurer and even joined the director in his motion for summary judgment. The FDIC's stake in Eagle's and Branum's claims is not as clear.

We find *Federal Deposit Ins. Corp. v. Israel* persuasive. Based on our reading of the relevant jurisdiction statute, 12 U.S.C. § 1819, and *Finley v. U.S.*, we find that the federal court in *FDIC v. Eagle* would not have had jurisdiction over the state law claims subsequently brought by Eagle and Branum. Therefore, res judicata does not preclude Eagle and Branum from bringing their state law claims in this case.

Collateral Estoppel

Next, we address the issue of collateral estoppel. The threshold question is what law governs collateral estoppel. In this case, the same result will be reached whether federal or state law is applied to the issue of collateral estoppel. Therefore, we do not decide the choice of law question.

In order to invoke the doctrine of collateral estoppel, a party must establish "(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). *See Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir.1981).

A. *No Requirement of Mutuality*

 In *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361 (Tex.1971), this Court stated,

The rule [of collateral estoppel] is generally stated as binding a party and those in privity with him.... Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy, and, where not so, that, at the least, the presently

asserted interest was actually and adequately represented in the prior trial. *Id.* at 363. This definition does not require mutuality for the invocation of collateral estoppel; rather, it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *Myrick v. Moody Nat'l Bank*, 590 S.W.2d 766, 769 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Hardy v. Fleming*, 553 S.W.2d 790, 792–93 (Tex. Civ.App.—El Paso 1977, writ ref'd n.r.e.). As this Court stated in *Tarter v. Metropolitan Sav. & Loan Ass'n*, "The doctrine applies when the party *against whom* collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit" (emphasis added). 744 S.W.2d 926, 927 (Tex.1988) (citing *Bonniwell*). Although Eagle cites several cases for the proposition that a party cannot avail himself of the doctrine of collateral estoppel unless he was a party or in privity with a party in the prior litigation, in each of those cases we held only that collateral estoppel cannot be asserted *against* a party who was not a party or in privity with a party in the prior litigation. *See Employers Casualty Co. v. Block*, 744 S.W.2d 940 (Tex.1988); *Bonniwell*, 663 S.W.2d 816; *Wilhite v. Adams*, 640 S.W.2d 875 (Tex. 1982); *Benson*, 468 S.W.2d 361. Similarly, the U.S. Supreme Court abandoned the requirement of mutuality in applying collateral estoppel in *Blonder–Tongue v. Univ. of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Therefore, the Directors, TCB, First Republic and Peat Marwick are not barred from asserting collateral estoppel by a requirement of mutuality; it is sufficient that Eagle and Branum were both parties in *FDIC v. Eagle*.

B. *Issues Essential to the Federal Judgment*

 Next, we must address the question of whether the federal court's findings regarding fraud in the transaction were essential to its judgment. Under state law, collateral estoppel only precludes the relitigation of identical issues of fact or law

which were actually litigated and essential to the prior judgment. *Tarter*, 744 S.W.2d at 927; *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985). The *Restatement (Second) of Judgments* § 27, comment (i) (1982) provides in part, "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." The rationale for this rule is that a determination in the alternative may not have been as rigorously considered as it would have been if necessary to the result, and the losing party may be dissuaded from appealing one determination because of the likelihood that the other will be upheld. *Id.*

In *FDIC v. Eagle*, the court found that neither First Midland nor its president, Charles Fraser, fraudulently induced Eagle and its partners to enter into the sale-leaseback transaction or execute the promissory notes in issue. 664 F.Supp. at 1045. The court also indicated, however, that the FDIC had a defense to these fraud claims because the FDIC did not have actual knowledge of the fraud at the time it entered into the purchase and assumption agreement. *Id.* at 1037. The court stated, "[I]f the Court had to, the Court would find that the FDIC did not have actual knowledge of conduct or communications that would give rise to a finding of fraud." *Id.* at 1045–46.[6]

The statement of the federal court regarding FDIC's knowledge of any fraud, viewed in the context of the entire opinion, does not constitute an alternative holding so as to prevent its holding on the fraud claims from having preclusive effect. While this alternative reasoning may have had some adverse effect on defendants' desire to appeal the judgment, it is clear that the federal court "rigorously considered" defendants' claims of fraudulent

inducement, carefully reviewing each contention. *Id.* at 1037–45. Therefore, applying state law to the circumstances of this case, we hold that the defendants' claims of fraudulent inducement were "actually tried" in the federal court and that the court's findings on fraudulent inducement were "essential" to its judgment for the purposes of preclusion by collateral estoppel.

The same result would be reached under federal law. For collateral estoppel to bar relitigation of an issue, that issue must have been "necessarily determined" in the prior litigation. *United States v. Garza*, 754 F.2d 1202, 1209 (5th Cir.1985); *Hicks*, 662 F.2d at 1168. Nevertheless, except in very unusual cases, the abandonment of estoppel for the reason that a prior judgment rests on multiple grounds is inconsistent with the general rule in federal courts that a party is only entitled to one full and fair opportunity to litigate an issue. 1B *Moore's Federal Practice* ¶ 0.443[5.–2] (1988). While the Fifth Circuit has adopted the reasoning of the *Restatement (Second) of Judgments* § 27 comment (i), it did so only in the context of offensive collateral estoppel. *Hicks*, 662 F.2d at 1169–70. Because this case only involves the defensive use of collateral estoppel, and because we have found the findings of the federal court in *FDIC v. Eagle* to be "essential" to that judgment and rigorously considered by that court, we hold that under federal law the alternative "findings" of the federal court do not preclude the application of collateral estoppel in the present litigation.

### C. Preclusion of Eagle's Claims

We now turn to the question of whether any of the issues in Eagle's case, *Mays*, were litigated in the prior action, thereby estopping Eagle from asserting the claims in this action.

#### 1. Common Law and Statutory Fraud

Eagle's first cause of action against the Directors is for common law

---

**6.** The "finding" of the Court regarding actual knowledge pertained only to defendants' claims that they were fraudulently induced to enter the sale-leaseback transaction and execute the promissory notes. The court did not consider the issue of FDIC's "actual knowledge" with respect to defendants' claim that First National Bank failed to disclose material facts with respect to the early funding of the letters of credit. 664 F.Supp. at 1048.

fraud. The elements of actionable fraud are that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983); *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977).

 Eagle bases its actions for common law and statutory fraud[7] on the grounds that the Directors made false representations or material omissions with the intent of inducing Eagle to enter into the sales-leaseback transaction and agree to early funding of the letters of credit. First, Eagle alleges that the Directors misrepresented the bank's financial condition. The court in *FDIC v. Eagle* found that a fiduciary relationship did not exist between Charles Fraser and the individual defendants, that Fraser's disclosures and representations were adequate to inform Eagle and its partners of the bank's financial position and the reasons for selling the building, that Fraser had represented to each Eagle partner that an unfavorable financial report had been received from bank examiners, and that each defendant knew the bank had definite financial problems. *FDIC v. Eagle,* 664 F.Supp. at 1043–44.

Second, Eagle alleges that the Directors misrepresented that Eagle could depreciate the property and that the completed sale would occur in 1982. The federal court found that these representations were only expressions of opinion with legal implications. Generally, misrepresentations as to matters of law are not actionable fraud. *Sawyer v. Pierce,* 580 S.W.2d 117, 125 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Such misrepresentations may be actionable between fiduciaries or where the representor has superior knowledge or

information and uses it unfairly. The court found, however, that there was no fiduciary relationship between Fraser and First Midland and the individual defendants and that Fraser did not have a decided advantage over them. *FDIC v. Eagle,* 664 F.Supp. at 1042.

Eagle also alleges that the Directors misrepresented the fair market value of the property and the existence of an appraisal in the amount of $75 million. The federal court found that the representation of such an appraisal was false and material, but that none of the defendants who heard the representation relied upon it, in that they did not request to view the appraisal and did not condition their participation on reviewing the appraisal. Furthermore, the court found that the defendants should have taken the precaution of reviewing an appraisal and informing themselves of the value of the properties. *FDIC v. Eagle,* 664 F.Supp. at 1042–43.

Finally, Eagle alleges that the Directors failed to inform them that the SEC and the Office of the Comptroller of the Currency had concerns about the validity of the original transaction. The federal court found, however, that Fraser accurately represented that the OCC viewed the sale as a positive step for the bank. *FDIC v. Eagle,* 664 F.Supp. at 1044.

The court in *FDIC v. Eagle* held, following its extensive review of the facts surrounding the transaction, that neither Fraser nor First Midland fraudulently induced the defendants to enter into the sale-leaseback transaction, execute the promissory notes, or agree to early funding of the letters of credit. *FDIC v. Eagle,* 664 F.Supp. at 1045, 1048. We hold that the findings of the federal court collaterally estop Eagle's actions for common law and statutory fraud in *Mays.*

### 2. Deceptive Trade Practices Act

Eagle also brings claims under the Deceptive Trade Practices Act (DTPA). Based on the same allegations underlying its fraud claims, Eagle alleges that the

---

7. The statutory fraud claim is based on TEX. BUS. & COM.CODE § 27.01.

foregoing representations and omissions violate TEX.BUS. & COM.CODE § 17.46(b) because they constitute representations or omissions that (1) the real property has characteristics, uses or benefits which it does not have, § 17.46(b)(5); (2) the real property is of a particular standard, quality or grade when it is another, § 17.46(b)(7); and (3) an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law, § 17.46(b)(12).

A defendant may be held liable for the deceptive trade practices described in § 17.46(b)(5), (7) and (12) even if the defendant did not know that the representations made were false or did not intend to deceive anyone. *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex.1980). Subdivisions (5) and (7) are designed to ensure the accuracy of descriptions of goods and services, and covers both general and specific descriptions. *Id.* Thus, misrepresentations which do not necessarily constitute common law fraud may be actionable under the DTPA. *See Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980) (noting that a primary purpose of the DTPA was "to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit"). To the extent that the federal court found that Charles Fraser and First Midland did not misrepresent the bank's financial condition and the position of the OCC regarding the transaction, DTPA claims may not be brought on this basis. However, Eagle is not collaterally estopped from bringing causes of action under § 17.46(b)(5) or (7) based on other allegations, including representations that there was an appraisal justifying the asking price of $75 million, which the federal court found to be false.

Eagle also alleges that the failure to disclose certain information about the real estate was intended to induce it into a transaction into which it would not have otherwise entered, § 17.46(b)(23). This subdivision includes an element of intent, and the court in *FDIC v. Eagle* held that

neither Fraser nor the Bank fraudulently induced the defendants to enter into the sale-leaseback transaction, execute the promissory notes, or agree to early funding of the letters of credit. *FDIC v. Eagle*, 664 F.Supp. at 1045, 1048. Eagle is therefore estopped from bringing a claim under § 17.46(b)(23) of the DTPA. Therefore, summary judgment was proper on the basis of collateral estoppel on the DTPA claims brought under § 17.46(b)(23).

### 3. Negligent Mismanagement

Eagle's final cause of action against the Directors is for negligent conduct in the performance of their duties, thereby breaching a fiduciary duty owed to Eagle. In *FDIC v. Eagle*, the federal court held that a fiduciary relationship did not exist between Charles Fraser and First Midland and Eagle's partners. *FDIC v. Eagle*, 664 F.Supp. at 1043–44. Since the Directors did not owe a fiduciary duty to Eagle's partners, and Eagle suing on its own behalf as a creditor cannot maintain a personal action against the Directors of the corporation for breaching their duty to the corporation, *see Sutton v. Reagan & Gee*, 405 S.W.2d 828, 834–35 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.), summary judgment was properly granted for the Directors on Eagle's negligent management cause of action.

### D. *Preclusion of Branum's claims*

Finally, we turn to the question of whether Branum is collaterally estopped from bringing his claims in *Branum*. Branum is collaterally estopped to the same extent as Eagle from bringing claims of fraud against the Directors and DTPA claims against the Directors under TEX. BUS. & COM.CODE § 17.46(b)(5), (7), (12) & (23).

In addition to the DTPA claims that parallel Eagle's DTPA claims, Branum has brought a claim under TEX.BUS. & COM.CODE § 17.50(a)(3), alleging that the Directors' actions constitute an unconscionable course of conduct. An act or practice that "results in a gross disparity between the value received and consideration paid,

in a transaction involving transfer of consideration," is considered unconscionable conduct under the DTPA. TEX.BUS. & COM.CODE § 17.45(5) (Vernon 1987). In this case, the consideration received by First Midland in the sale-leaseback transaction was $75 million. The transaction was entered into on December 31, 1982. The record shows that the bank property was appraised at $35 million as of November 23, 1982. Collateral estoppel does not bar Branum from bringing a DTPA claim on this basis.

■ As part of his suit, Branum also alleges that TCB and First Republic owed him a fiduciary duty, and has brought claims of fraud, negligence, and breach of contract/promissory estoppel against TCB and First Republic with respect to their participation in the sale of the First Midland property, a rehabilitation funding program following the sale, and the funding of the $50 million letters of credit. These claims include allegations that Branum would not have agreed to the early funding of the $50 million letters of credit if he had known that TCB and First Republic were not going to fund First Midland with $200 million under the rehabilitation program. Branum has also presented claims against Peat Marwick for fraud, negligence, gross negligence, and accounting malpractice with respect to the sale-leaseback transaction. Branum's suit also includes DTPA claims against these parties.

In *FDIC v. Eagle*, the federal court only held that Charles Fraser and First Midland did not fraudulently induce Eagle into the sale-leaseback transaction, the execution of the promissory notes, and the early funding of the letters of credit. The issues which were actually litigated and essential to that judgment are different from the issues presented in Branum's suit against TCB, First Republic, and Peat Marwick. Therefore, Branum is not collaterally estopped from bringing his claims against these parties.

Statute of Limitations

■ With respect to the suit filed by Branum, the summary judgment in favor of TCB, First Republic, and Peat Marwick was based in part on the grounds that Branum's claims were barred by the relevant statute of limitations. Branum's claims which are based on fraud are governed by a four-year statute of limitations, *Williams v. Khalaf*, 802 S.W.2d 651 (1990), not a two-year statute of limitations as held by the court of appeals. Branum's original petition was filed on October 11, 1985. Therefore, the summary judgment on Branum's fraud claims cannot be upheld on the statute of limitations grounds. Branum's other claims against TCB, First Republic, and Peat Marwick may be barred by the relevant statutes of limitations. We therefore remand this cause to the court of appeals to determine which, if any, of Branum's claims other than fraud against TCB, First Republic, and Peat Marwick are barred by the relevant statutes of limitations, and whether fact questions existed, sufficient to withstand summary judgment, regarding the date Branum knew or should have known of the actionable conduct, where necessary for determination of the statute of limitations questions. Tex.R. App.P. 90(a).

Conclusion

We hold that res judicata does not preclude Eagle and Branum from bringing their state law claims in this case. Collateral estoppel bars Eagle and Branum from bringing claims of common law and statutory fraud against the Directors, some of the DTPA claims against the Directors, and Eagle's negligent mismanagement claim against the Directors. The remaining DTPA claims brought against the Directors and the claims brought by Branum against TCB, First Republic, and Peat Marwick are not collaterally estopped by the federal judgment. Finally, Branum's fraud claims are not barred by the relevant statute of limitations. Accordingly, we reverse the judgment of the court of appeals in part, affirm in part, and remand this cause to the court of appeals for further consideration of whether Branum's claims other than fraud against TCB, First Republic, and

Peat Marwick are barred by the relevant statutes of limitations.