**EAGLE PROPERTIES, LTD., M.W. Branum, and Thomas G. Brown, Appellants,**

v.

**KPMG PEAT MARWICK, Appellee.**

No. 08–93–00478–CV.

Court of Appeals of Texas, El Paso.

June 15, 1995.

Rehearing Overruled July 26, 1995.

Ray Stoker, Jr., Shafer, Davis, Ashley, O'Leary & Stoker, Odessa, James P. Boldrick, Boldrick, Clifton, Nelson & Holland, Midland, Dick R. Holland, Boldrick, Clifton, Nelson & Holland, Midland, for appellants.

John H. McElhaney and Timothy W. Mountz, Locke Purnell Rain Harrell, Dallas, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

LARSEN, Justice.

Plaintiffs/appellants Eagle Properties, Ltd., a limited partnership, and M.W. Branum, its managing partner, appeal the trial court's summary judgment in favor of defendant KPMG Peat Marwick, an accounting firm. Eagle also appeals the trial court's denial of its motion for partial summary judgment. We affirm.

### FACTS

This appeal is yet another chapter in a saga which began in 1982, arising from the financial problems and ultimate failure of The First National Bank of Midland. The transaction from which this appeal stems has been the subject of much litigation in federal and state courts over the last decade.

In 1982, First National Bank of Midland encountered serious financial difficulties, created by its large portfolio of energy-related loans, many of which became uncollectible after the oil bust of the early eighties. To improve its precarious financial position (at least on paper), the bank decided to sell its twenty-four-story office building in downtown Midland, thus turning a non-producing capital asset into an income-producing one. In December 1982, the bank's president, Charles Fraser, approached a number of prominent Midland businessmen, suggesting they buy the bank building, then lease it back to the bank. Fraser was quite open with the partners about the bank's financial straits and its need for this transaction. "[The banks's] disclosures and representations were adequate to inform Eagle and its partners of the bank's financial position and the reasons for selling the building ... and ... [each of Eagle's partners] knew the bank had definite financial problems." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex.1990), citing *FDIC v. Eagle Properties, Ltd.*, 664 F.Supp. 1027, 1043–44 (W.D.Tex.1985). A number of Midland's prominent citizens agreed to the plan.

On December 31, 1982, these individuals formed the limited partnership Eagle Properties and that day Eagle bought the bank's property, agreed to lease the property back to the bank, and provided that the bank would continue to manage the property. M.W. Branum and Thomas C. Brown were Eagle's general partners; Brown was also an advisory director of the bank. Eagle's consideration for the purchase was $25 million in unsecured promissory notes from Eagle and

two unfunded letters of credit from Texas Commerce Bank and InterFirst Bank Dallas, to be funded in December 1983. In June 1983, Eagle agreed to fund the letters six months ahead of schedule.

On October 14, 1983, the First National Bank of Midland was declared insolvent and the FDIC appointed its receiver. The FDIC sued Eagle Properties and its partners on the promissory notes. Eagle and its partners raised numerous defenses to payment of the notes, which the federal district court, in a lengthy opinion following trial on the merits, rejected. It entered judgment for the FDIC. *FDIC v. Eagle Properties, Ltd.*, 664 F.Supp. 1027 (W.D.Tex.1985). In two suits filed in state court, Eagle and its partners sued FNBM, its directors, TCB and Inter-First, and Main Hurdman, FNBM's independent auditor in 1981 and 1982 (Main Hurdman was later taken over by KPMG Peat Marwick; it is that firm which is appellee). Summary judgment was entered by the trial court in both suits, which judgments wound their way through the appellate system. The Texas Supreme Court eventually affirmed many aspects of the summary judgments, but reversed and remanded those causes of action involving the accounting firm. Those claims were the subject of another summary judgment, and they are the subject of this appeal.

KPMG issued financial statements on FNBM for 1981 and 1982. The 1981 financial statement was issued on January 15, 1982. The 1982 financial statement was issued on January 28, 1983. Eagle's lawsuit alleges that these statements contained fraudulent misrepresentations which induced it to enter the sale/leaseback, and that KPMG and the bank conspired to defraud Eagle.

### FRAUD

■ In its first point of error, Eagle contends that the trial court erred in granting summary judgment against it on its claim of fraud against KPMG. The elements of actionable fraud are: (1) a material misrepresentation; (2) that is false; (3) which the speaker knew was false or made recklessly without any knowledge of truth or falsity; (4)

made with the intent that it be acted upon by the plaintiff; (5) upon which the plaintiff acted in reliance; and (6) which proximately results in injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688–89 (Tex.1990); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). To prevail on summary judgment, KPMG must conclusively disprove at least one of these elements.

■ Actionable fraud requires that the party making the representation do so with the actual intent to cause the other to rely upon the falsity. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex.1990). In other words, the representing party must intend to induce action or inaction by means of the false representation. In this case, the summary judgment clearly establishes that KPMG could not have intended to induce Eagle or its partners into any act. When the 1981 financial statement was issued on January 15, 1982, and reissued in July 1982, the bank had yet to even approach plaintiffs about buying the building. Eagle had not been formed, and KPMG certainly had no knowledge that the bank building was for sale, or that its purchase was contemplated by Brown and Branum. Thus, any representation in the 1981 report could not have been made to induce anyone into participating in the sale/leaseback.

■ As for the 1982 report, when it was issued on January 28, 1983, the sale/leaseback transaction was complete. A representation made after a transaction is complete, no matter how false, cannot give rise to an action for fraud. *Morgan v. Amarillo National Bank*, 699 S.W.2d 930, 937 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.); *Banks v. Merritt*, 537 S.W.2d 494, 496–97 (Tex.Civ.App.—Tyler 1976, no writ). Thus, as a matter of law, Eagle could not have relied on any information in the 1982 financial statement in deciding to purchase the bank building. *Westcliff Co. v. Wall*, 153 Tex. 271, 267 S.W.2d 544, 546 (1954); *Jefmor, Inc. v. Chicago Title Ins. Co.*, 839 S.W.2d 161, 163–64 (Tex.App.—Fort Worth 1992, no writ).

Eagle Properties argues that the 1982 financial statement caused it to agree to the

early funding of the letters of credit which financed the sale/leaseback. Even assuming that KPMG intended to induce Eagle to fund the letters early by the representations in the 1982 financial statement, we nevertheless note that plaintiffs were obligated to fund the notes by December 31, 1983. Even if there was reliance, then, there was no injury as Eagle and its partners would have been liable on the letters in any event.

Finally, we conclude that Eagle's reliance upon *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408 (Tex.App.— Dallas 1986, writ ref'd n.r.e.) is misplaced. The *Blue Bell* Court squarely rejected any relaxing of the intent element for fraud. Eagle asks that we apply the same standard *Blue Bell* uses for negligent misrepresentation claims to its claim for fraud. We decline to do so, just as did the *Blue Bell* Court, finding that the well-established rule requires much more to prove a fraud cause of action than one in negligence. *Milestone Properties, Inc. v. Federated Metals, Corp.,* 867 S.W.2d 113, 119 (Tex.App.—Austin 1993, no writ).

## CONSPIRACY

Eagle's second cause of action against KPMG is civil conspiracy, alleging that the accounting firm and the bank conspired to commit fraud. A conspiracy requires "two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983). The elements of a civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury. *Id.; First Interstate Bank of Texas v. SBFI, Inc.,* 830 S.W.2d 239, 249 (Tex.App.—Dallas 1992, no writ). Conspiracy requires wrongful conduct that would be actionable against each co-conspirator individually. *Gulf Atlantic Life Insurance Co. v. Hurlbut,* 696 S.W.2d 83, 102 (Tex.App.—Dallas 1985), *rev'd on other grounds,* 749 S.W.2d 762 (Tex.1987); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 487 (Tex.App.—Corpus Christi 1989, writ denied). In this case, the individual wrong alleged is fraud; thus, Eagle's conspiracy must rest on proof of an agreement to commit an underlying fraud. As we have discussed in the preceding section, KPMG has conclusively established it cannot have committed fraud against Eagle regarding the sale/leaseback of the bank building.

Moreover, prior litigation in this case has conclusively established that the bank did not defraud Eagle. *Eagle Properties, Ltd.,* 807 S.W.2d at 723; *FDIC v. Eagle Properties, Ltd.,* 664 F.Supp. 1027, 1045 (W.D.Tex.1985). The Texas Supreme Court has held Eagle is collaterally estopped from asserting fraud claims against the bank. *Eagle Properties,* 807 S.W.2d at 723. Thus, Eagle is likewise precluded from asserting that KPMG conspired with the bank to defraud the partnership. *Kale v. Palmer,* 791 S.W.2d 628, 629 (Tex.App.—Beaumont 1990, writ denied). We conclude that neither alleged party to the conspiracy having done any fraudulent act, as a matter of law no conspiracy to commit fraud can be shown. Eagle's Points of Error One and Two are overruled.

## EAGLE'S MOTION FOR SUMMARY JUDGMENT

In its third point of error, Eagle urges that the trial court should have granted its motion for partial summary judgment. That motion is based upon the same argument and facts that we have concluded were insufficient to raise a fact issue precluding KPMG's summary judgment. If no fact issue was raised, then certainly Eagle has not shown any right to prevail as a matter of law on the same issues. Point of Error Three is overruled.

## CONCLUSION

The trial court's judgment in this case is affirmed.