**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2012

No. 11-20261

Lyle W. Cayce
Clerk

NEW CENTURY FINANCIAL, INC.,

Plaintiff-Appellee,

v.

OLYMPIC CREDIT FUND, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment in favor of Olympic Credit Fund, Inc. ("Olympic"), on New Century Financial, Inc.'s ("New Century") claims of fraud and negligent misrepresentation. WE AFFIRM.

**I.**

New Century and Olympic are both sophisticated actors in the factoring industry. Factoring is a type of financing where one business (the factoring client) sells its right to receive payment for goods sold or services rendered to customers (account debtors) to another business (the factor) at a discounted

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Rule 47.5.4.

price.  On November 29, 2006, Olympic and Education Advance entered into a contractual factoring relationship.  Education Advance purported to provide tutoring services to Newark Public Schools under the No Child Left Behind Act.  Olympic purchased certain accounts receivable owed by Newark Public Schools to Education Advance for the purported provision of tutoring services.

On April 8, 2009, Education Advance contacted New Century to discuss the prospect of a factoring relationship.  From April 8, 2009 to May 19, 2009, New Century conducted due diligence regarding the potential transaction.  On April 29, 2009, New Century entered into an Agreement for Purchase and Sale of Accounts with Education Advance to sell, transfer, and assign its accounts receivable at a discounted price below their face value.  Under this agreement, Education Advance received cash from New Century in return for promises and warranties with respect to the collection of the accounts receivable and payments to New Century.  New Century discovered during due diligence that Education Advance and Olympic were already in a factoring relationship.  Before New Century could become the new factor, Olympic had to release its ownership and security interest in the Education Advance account.  On May 14, 2009, New Century, Olympic, and Education Advance signed a Payoff Agreement (effective date May 13, 2009).  Under the Payment Agreement, Olympic provided New Century with a net payoff amount of $955,150.04 to release Olympic's ownership and security interest in the account.

The first and only time that New Century directly contacted and communicated with Olympic was on May 19, 2009, during a single four-minute telephone call between New Century's Vice-President of Operations, Nel Somarriba ("Somarriba"), and an account representative for Olympic, Heather Panteleeff ("Panteleeff").  The timing of this telephone call occurred: (1) more than three weeks after the April 29, 2009, effective date of the Agreement for Purchase and Sale of Accounts between New Century and Education Advance; (2) approximately one week after the May 13, 2009, effective date of the Payoff

Agreement between New Century and Olympic; and (3) just hours before New Century wired $955,150.04 in funds to Olympic pursuant to the Payoff Agreement. New Century and Olympic dispute whether the purpose of the telephone call was to conduct due diligence on Education Advance or to verify the amount and method that New Century was to pay Olympic under the Payoff Agreement. During the call, Somarriba stated that "she just want[ed] to make sure and verify the payoff amount." Soon after, Panteleeff told Somarriba that New Century was a "good" account and that Olympic "just couldn't accommodate one of [Education Advance's] credits." A few hours after the telephone call, New Century paid Olympic $955,150.04 pursuant to the Payoff Agreement.

A few weeks later, on June 15, 2009, New Century discovered that Education Advance allegedly converted $866,869.00 in funds from Newark Public Schools that should have been paid to New Century. That conversion prompted New Century to conduct an investigation, which revealed that Education Advance's accounts receivable were fraudulent. Specifically, New Century discovered that the purported entity Education Advance had contracted with as "Newark Public Schools" was a fraudulent entity. New Century also discovered that on May 1, 2009, Education Advance converted a check in the amount of $254,430.00 that rightfully belonged to Olympic under the factoring agreement. Olympic had not disclosed this prior conversion to New Century.

On June 30, 2009, New Century filed suit against Olympic alleging claims of fraud and negligent misrepresentation. New Century claimed that Olympic's alleged misrepresentations and omissions induced New Century to purchase the factoring account, and that but for these alleged misrepresentations and omissions, the company "would not have entered into any agreement with Olympic." New Century sought damages in the amount of $955,105.04, the exact

amount it paid Olympic for the Education Advance account.[1]  After filing suit, New Century moved for partial summary judgment on its claims, and Olympic moved for dismissal of New Century's claims.  On cross-motions for summary judgment, the district court held that: (1) the general release and merger clauses contained in the Payoff Agreement explicitly disclaimed reliance as a matter of law and precluded New Century's fraud claims, and (2) the economic-loss rule barred New Century's negligent misrepresentation claim.  New Century timely appealed.[2]

## II.

This court reviews a district court's entry of summary judgment *de novo*, applying the same standard as the district court.  *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2001).  Summary judgment is appropriate in the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(a).  "Even if we do not agree with the reasons given by the district court to support summary judgment, we may affirm . . . on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus, Inc.*, 418 F.3d 436, 439 (5th Cir 2005).

The parties agree that Texas substantive law applies to this diversity case. *See, e.g.*, *Abraham v. State Farm Mut. Auto Ins. Co.*, 465 F.3d 609, 611 (5th Cir.

---

[1]  New Century also sought rescission of its purchase agreement of the Education Advance account based on mutual mistake.  In granting summary judgment in favor of Olympic, the district court did not separately address New Century's mutual mistake claim. New Century has not raised this claim on appeal, and therefore, has waived any argument regarding the claim.  *See Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997) ("All issues not briefed are waived.").

[2]  The parties dispute whether the district court's grant of summary judgment in favor of Olympic was proper after the Texas Supreme Court issued its opinion in *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323 (Tex. 2011).  *Italian Cowboy* addressed whether specific contractual provisions, which are similar to the provisions in the Payoff Agreement in this case, disclaimed reliance or simply amounted to a general merger clause, which would not have disclaimed reliance.  We need not address this issue based on the facts of this case because, as discussed *infra,* New Century did not satisfy the reliance or inducement elements of its fraud claim, and the economic-loss rule bars New Century's negligent misrepresentation claim.

2006) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).  Under Texas law, claims of fraud require a showing of reliance.  *See Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex. 2012).  Claims of fraud also require a showing that the defendant intended to induce the plaintiff to act or to refrain from acting.  *See Italian Cowboy*, 341 S.W.3d at 337 (quoting *Aquaplex*, 297 S.W.3d at 774).  Moreover, to succeed on a negligent misrepresentation claim,[3] plaintiffs must show that they suffered a pecuniary loss by justifiably relying on a representation.  *Sloane*, 825 S.W.2d at 442.

In this case, New Century did not satisfy the reliance element of its fraud claim.  All of the alleged misrepresentations and omissions made by Panteleeff during the telephone call occurred on May 19, 2009, five days after New Century and Olympic signed the Payment Agreement on May 14, 2009 (effective date May 13, 2009).  Therefore, New Century could not have actually relied on Panteleeff's statements at the time that it entered into the Payment Agreement with Olympic.  *See Eagle Properties, Ltd. v. KPMG Peat Marwick*, 912 S.W.2d 825, 827 (Tex. Ct. App. 1995) (holding that the reliance element of a fraud claim cannot be satisfied based on a representation made after a transaction is complete).

For the same reasons, New Century has not satisfied the inducement element of its fraud claim.  The facts of this case do not show that Olympic "induced" New Century to enter into either the Payoff Agreement with Olympic or the Agreement for Purchase and Sale of Accounts with Education Advance. The telephone call between Panteleeff and Somarriba occurred after New

---

[3]    Under Texas law, the elements of negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Century entered into both agreements, and therefore, Panteleeff's alleged misrepresentations and omissions could not have induced New Century to enter into either agreement. Olympic simply transferred the account that New Century was taking over after New Century reached its deal with Education Advance. *See Eagle Properties*, 912 S.W.2d at 827 (recognizing that "[a] representation made after a transaction is complete, no matter how false, cannot give rise to an action for fraud").

As for New Century's negligent misrepresentation claim, we agree with the district court's conclusion that New Century has not shown that it suffered a pecuniary loss by justifiably relying on Olympic's representations. The economic-loss rule bars tort actions based solely on recovery of the loss or damage to the subject of a contract. *See, e.g.*, *D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998). New Century did not allege an injury distinct from the injury that it suffered under the Payoff Agreement. Moreover, New Century sought the exact measure of damages that it paid Olympic to assume the Education Advance account under the Payoff Agreement. Therefore, the economic-loss rule bars New Century's negligent misrepresentation claim.

We conclude that the district court did not err by granting summary judgment in favor of Olympic. AFFIRMED.