Opinion filed November 1, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed November 1,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00167-CV 

                                                    __________

 

                                         MARIO PEREZ, Appellant

 

                                                             V.

 

     HUNG KIEN LUU AND
MICROCACHE COMPUTERS, INC., Appellees

 



 

                                         On
Appeal from the 281st District Court

 

                                                          Harris
County, Texas

 

                                               Trial
Court Cause No. 2003-50534

 



 

                                                                   O
P I N I O N

 

This
is a DTPA claim.[1]  Mario Perez
filed suit against Hung Kien Luu and MicroCache Computers, Inc., contending
that they violated the DTPA by refusing to sell him 100 hard drives at the
advertised price of $1 each.  The trial court conducted a bench trial and
entered a take-nothing judgment.  We affirm.

                                                              I.
Background Facts








MicroCache
was a computer-related business.  It maintained a website that listed computer
parts, including hard drives, for sale.  Perez was a refinery operator for
Shell Oil Refinery and repaired computers as a side business.  The night of
July 15, he was looking for hard drives on the internet and went to MicroCache=s website.  He noticed that
Seagate 146GB hard drives were listed for $1 each.   Perez ordered 100 hard
drives, paid MicroCache $228.25, and received a confirmation e-mail.  The
following day, he received an e-mail from Luu, a MicroCache officer, advising
him that there was a system error and that his payment was being refunded. 
Perez e-mailed a response advising Luu that he did not want a refund but wanted
the 100 hard drives and that he expected delivery within ten days.  Perez
checked MicroCache=s
website again and saw that the hard drive=s
price was now $1,195 each.

MicroCache
refused to sell the hard drives for $1, and Perez filed suit against Luu and
MicroCache.  The case was tried to the court without a jury.  The court found
that Perez placed an order for 100 hard drives and paid MicroCache, that
MicroCache=s website
had a pricing error, that the website advised customers that MicroCache had the
right to correct any pricing error, that Perez was aware of this right, that
MicroCache refunded Perez=s
purchase price upon learning of the pricing error, and that Perez accepted the
credit.  The trial court also found that MicroCache did not violate the DTPA
and that neither it nor Luu was liable to Perez.  Based upon these findings,
the trial court entered a take-nothing judgment.

                                               II. Issues

Perez
challenges the trial court=s
judgment with six issues.  Perez argues that the trial court=s judgment is inconsistent
with its findings of fact, that the trial court=s
finding that he was not deceived is based upon legally or factually
insufficient evidence, that this finding conflicts with the trial court=s other findings, that the
trial court=s finding
that PayPal was acting as MicroCache=s
agent is based upon legally or factually sufficient evidence, and that the
trial court erred by not entering judgment in his favor.

                                                                   III.
Discussion

A. 
Does the Trial Court=s
Judgment Conform With Its Findings of Fact?  








Perez
argues that the trial court=s
take-nothing judgment does not conform with its findings of fact because the
court=s findings do
not negate at least one element of his claim or support every element of at
least one affirmative defense and that the findings actually support his DTPA
claims.[2]  Perez correctly
notes that he was required to prove four elements to establish a DTPA claim: 
(1) that he was a consumer; (2) that the defendant(s) engaged in at least one
of the laundry list items; (3) that he detrimentally relied on the false,
misleading, or deceptive act or practice; and (4) that the false, misleading,
or deceptive act or practice was a producing cause of his injury.  See
Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex. 1996).  

Perez
alleged that MicroCache and Luu committed three laundry list violations:

*          representing
that goods or services have sponsorship, approval, characteristics,
ingredients, uses, benefits, or qualities which they do not have;[3]

 

*          advertising
goods or services with intent not to sell them as advertised;[4]
and

 

*          representing
that an agreement confers or involves rights, remedies, or obligations which it
does not have or involve or which are prohibited by law.[5]

 

Each of Perez=s laundry list claims is
based upon the hard drive=s
advertised price.  Perez contends that the advertised price of $1 was a
representation that (1) the hard drives had a characteristic (a $1 purchase
price) and (2) that an agreement confers or involves rights (the right
to purchase hard drives for $1).  Perez argues that, because MicroCache refused
to sell him 100 hard drives for $1 each, these representations were false. 
Perez also argues that he was not required to prove that MicroCache knowingly
or intentionally made these misrepresentations and, therefore, that any pricing
mistake is immaterial.








The
Texas Supreme Court has held that a defendant may be liable for some laundry
list violations even if it did not know that the representation was false and
it did not intend to deceive.  See Eagle Props., Ltd. v. Scharbauer, 807
S.W.2d 714, 724 (Tex. 1990) (misrepresentations that do not necessarily
constitute common-law fraud may be actionable under the DTPA).[6] 
Knowledge or intent is required only if called for by the language of the
implicated laundry list item.  Pennington v. Singleton, 606 S.W.2d 682,
689 (Tex. 1980).  However, the court has also held that legislative intent
should be determined from the language of the entire act and not isolated
portions.  Id. at 686.  

The
DTPA contains four laundry list items specifically referring to advertising
representations, Section 17.46(b)(9), (10), (17), and (18).  Subsections (17)
and (18) have limited applicability.  Subsection (17) forbids advertising a
sale by fraudulently representing that a business is going out of business. 
Subsection (18) forbids certain advertisements in connection with a
prescription drug identification card.  Subsections (9) and (10), conversely,
are broadly phrased, apply to all advertising, and are generally implicated by
price representations.  

Subsection
(9) prohibits advertising goods or services with intent not to sell them as
advertised, and subsection (10) prohibits advertising goods or services with
intent not to supply a reasonable expectable public demand unless the
advertisement discloses a limitation of quantity.  This type of conduct has
been referred to as Abait
and switch@
advertising.  See Smith v. Baldwin, 611 S.W.2d 611, 615 (Tex. 1980)
(describing bait advertising as attracting customers by advertising products at
low prices and then switching them to another product at a higher price), and Transmission
Exchange Inc. v. Long, 821 S.W.2d 265, 270 (Tex. App.CHouston [1st Dist.] 1991,
writ denied) (describing the bait and switch technique).  Both subsections
require proof of intent and, in fact, are the only two laundry list items to
use the word Aintent.@








Because
the legislature assigned a higher burden of proof to the two laundry list items
based upon general advertising representations and because the legislature
worded those two items in a way that typically implicates price
representations, we believe that the legislature did not intend to impose
strict liability for advertising mistakes such as the one before us.  We
realize that courts have held that the DTPA imposes a duty on sellers to know
if their factual representations are correct.  See, e.g., Lone Star Ford,
Inc. v. McGlashan, 681 S.W.2d 720, 723 (Tex. App.CHouston [1st Dist.] 1984, no writ).  The cases
that have discussed this principle, however, have involved a direct
representation from the defendant to the plaintiff.[7] 


This
does not mean that, merely because a representation is included in some form of
advertising, subsections (9) and (10) are the exclusive avenues of relief. 
Representations beyond price and representations in addition to those in the
advertising may violate other laundry list items.  Additionally, a particular
form or manner of advertising may lead to a different result. However, if the
misrepresentation is limited to an item=s
price and that misrepresentation is made only in a general advertisement, we
believe the legislature intended that a claimant prove an intentional
misrepresentation to recover under the DTPA.

There
was considerable evidence that the $1 price was a mistake.  Luu testified that
the website was new and that his programmer used a $1 purchase price to test
it.  The price was then mistakenly left at $1.  Perez refused to concede the
price was a mistake but did describe it as Aa
damn good deal.@  In
fact, it was such a good deal that, even though he had only sold ten computers
in the last five years, he ordered 100 hard drives when he saw the price. 
Because Perez was required to prove intent to establish an advertising
misrepresentation under the DTPA and because the trial court found that the
advertised price was a mistake, its take-nothing judgment is consistent with
its findings.








Even
if we are incorrect in our analysis and Perez was entitled to assert a claim
under subsection (5) or (12) without proving intent, the trial court still
correctly entered a take-nothing judgment.  Perez understandably focuses on the
website=s initial
price posting to define the operative representation.[8] 
But Perez ignores the fact that the listed prices were not unconditional.   The
website advised customers that A[p]rices
are for reference purposes only and are subject to change without notice. 
Micro[C]ache is not held responsible for any errors or discrepencies [sic].@  Consequently, Perez was
on notice when he ordered 100 Seagate hard drives that MicroCache could refuse
to consummate the transaction if there was a pricing error.  Because the $1
purchase price was a mistake and because MicroCache refunded Perez=s money as soon as it
realized the error, the trial court correctly found that Perez was not
deceived.  That finding is sufficient to establish that MicroCache did not
commit a false, misleading, or deceptive act or practice.  Perez=s first and second issues
are overruled.

B. 
Did the Trial Court Err by Finding that Perez Was Not Deceived?  

Perez
next argues that the trial court=s
finding that he was not deceived is based upon legally or factually insufficient
evidence and that it conflicts with other fact findings.  A trial court=s factual determinations
are reviewed for legal sufficiency under the same standards used to review a
jury=s verdict.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  In considering a
legal sufficiency challenge, we review all the evidence in the light most
favorable to the prevailing party, indulging every inference in that party=s favor.   Associated
Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 286‑87 (Tex.
1998).  In reviewing a factual sufficiency challenge, we consider all of the
evidence and uphold the finding unless the evidence is too weak to support it
or the finding is so against the overwhelming weight of the evidence as to be
manifestly unjust.  Westech Eng=g,
Inc. v. Clearwater Constructors, Inc., a Div. of Phelps, Inc., 835 S.W.2d
190, 196 (Tex. App.CAustin
1992, no writ).








The
evidence is sufficient both legally and factually to support the trial court=s finding that Perez was
not deceived.  We have previously found that the $1 purchase price was posted
in error and that MicroCache=s
website notified potential customers that MicroCache had the right to correct a
pricing error.  This is sufficient to defeat a misrepresentation claim. 
Morever, because MicroCache is not strictly liable for the pricing error, this
finding is not in conflict with the trial court=s
other findings.  Perez argues that he was undisputably a consumer as defined by
the DTPA.  We agree.  Perez also argues that the trial court=s findings that he ordered
and paid for the drives establish his reliance and damages.[9] 
We do not agree, but collectively these are three of four elements that must be
proven to establish a DTPA claim.  Perez was also required to prove a laundry
list violation.  We have previously found that Perez was required to prove an
intentional misrepresentation, which he did not do, and alternatively that,
because the pricing was qualified, MicroCache did not make a
misrepresentation.  This is sufficient to defeat a DTPA claim regardless of
Perez=s other proof. 
Issues three and four are overruled.

In
his fifth issue, Perez contends that the trial court erred when it found that
MicroCache and Luu were not liable to him.  Perez argues that the trial court
erred by finding that he was not Adeceived@ because none of the
laundry list items specifically refer to or require proof of a deception.  This
is correct, but the DTPA requires proof of a Afalse,
misleading, or deceptive act.@ 
Section 17.46(a).  We have previously held that the trial court=s finding that Perez was
not deceived is sufficient to establish that the defendants did not commit a
laundry list violation.  Cf. Eagle Props., 807 S.W.2d at 724 (finding in
prior lawsuit that defendant did not misrepresent the bank=s financial condition and
the OCC=s position on
the challenged transaction barred a DTPA claim in a subsequent suit on this
same basis).  Perez=s
fifth issue is overruled.

Our
holdings make it unnecessary to address Perez=s
sixth issue challenging the trial court=s
finding that PayPal acted as his agent.  Tex.
R. App. P. 47.1.

                                             IV. Holding

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

November 1, 2007

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.









     [1]Deceptive Trade
Practices Act, Tex. Bus. & Com. Code
Ann. ' 17.41 et seq. (Vernon 2002 & Supp. 2006).





     [2]See Tex. R. Civ. P. 299 (when findings of
fact are filed by the trial court they shall form the basis of the judgment
upon all grounds of recovery and of defense); see also Pac. Employers Ins.
Co. v. Brown, 86 S.W.3d 353, 357 (Tex. App.CTexarkana
2002, no pet.) (when findings of fact do not support the judgment, the judgment
should either be reformed to conform to the findings or, if appropriate,
reversed).





     [3]Section
17.46(b)(5).





     [4]Section
17.46(b)(9).





     [5]Section
17.46(b)(12).





     [6]Eagle Properties
involved allegations of misrepresentations pursuant to Section 17.46(b)(5),
(7), and (12).  The court held that these laundry list items did not require
proof of intent.  807 S.W.2d at 724.  





     [7]See, e.g., Milt
Ferguson Motor Co. v. Zeretzke, 827 S.W.2d 349, 357 (Tex. App.CSan Antonio 1991, no writ); Wagner v. Morris,
658 S.W.2d 230, 233 (Tex. App.CHouston [1st
Dist.] 1983, no writ); Ybarra v. Saldana, 624 S.W.2d 948, 951 (Tex. App.CSan Antonio 1981, no writ).





     [8]Perez also argues
that the e-mail he received confirming his order was a misrepresentation.  If
so, that e-mail would not support a DTPA claim because he had already ordered
the hard drives and, therefore, did not detrimentally rely upon it.





     [9]Perez=s only act of reliance was to order and pay for 100
drives.  Perez contends that, even though MicroCache refunded his money as soon
as the mistake was identified, he is entitled to receive benefit-of-the-bargain
damages totaling $119,500.  Perez argues that he was promised 100 drives, but
received none, and that, because each drive was worth $1,195, he is entitled to
100 x $1,195.

 

      Section17.50 allows a consumer to recover
economic or mental anguish damages, but any recovery is conditioned upon proof of
actual damage.  City of Marshall, Tex. v. Bryant Air Conditioning Co.,
650 F.2d 724, 726 (5th Cir. 1981).  The benefit-of-the-bargain damage model
compensates a DTPA claimant for the difference between the value as represented
and the value actually received.  Leyendecker & Assocs., Inc. v. Wechter,
683 S.W.2d 369, 373 (Tex. 1984).  The only representation Perez relied upon was
the $1 purchase price.  Thus, even if Perez were otherwise correct, his maximum
damages under this theory would be only $100.