COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-243-CV

 

 

ESTATE OF BRANCH ARCHER,                                            APPELLANTS



BY
RICHARD K. ARCHER 

AS
PERSONAL REPRESENTATIVE, 

AND
RICHARD K. ARCHER, INDIVIDUALLY

AND
AS TRUSTEE OF THE 

RICHARD
K. ARCHER, M.D., P.A. 

PROFIT
SHARING PLAN & TRUST

 

                                                      V.

 

RICHARD O. HARRIS, INDIVIDUALLY                                        APPELLEE

AND
AS TRUSTEE OF THE 

RICHARD
O. HARRIS PROFIT SHARING TRUST

 

                                                  ------------

 

              FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------








Introduction

This is a
partnership dispute.  In six issues,
Appellant Richard K. Archer (Archer)[2]
complains of a summary judgment in favor of Appellee Richard O. Harris,
Individually and as Trustee of the Richard O. Harris Profit Sharing Trust
(Harris) on Archer=s claims for
breach of covenant against encumbrances and for money had and received.  We affirm.

                                                Background

Archer and Harris formed a
limited liability partnership with Steve Sterquell in early 1993 to purchase
land and a building near the Amarillo airport (the AProperty@).  Archer, individually, signed a promissory
note, secured by a deed of trust executed by all three partners, for $185,000
to purchase the Property. 








In late 1993, Harris told
Archer that Harris thought he and Archer should no longer do business with
Sterquell.  Shortly thereafter, Branch
(Archer=s brother) offered to purchase Harris=s interests in the partnership and in the Property.  Harris agreed to sell to Branch and, in
December 1993, Harris executed instruments transferring his interests in the
partnership and in the Property to Randall Kubiak as trustee for Branch.  Branch tendered a check to Harris that, at
Archer=s urging, Harris endorsed, placing the funds in a bank.  Sterquell did not consent to this sale. 

In late June 1994, the
Amarillo Economic Development Corporation (AEDC) approached Archer about AEDC=s interest in purchasing the Property. 
Archer did not tell Harris or Sterquell about AEDC=s interest. 

On July 1, 1994, Archer,
Harris, and Sterquell met to discuss resolving their differences.  After a full day of negotiations, the parties
entered into a Mutual Compromise Settlement and Partition Agreement (the Mutual
Release).[3]  The Mutual Release effectively transferred
Harris=s and Sterquell=s interests
in the Property and the partnership to Archer. 
The  Mutual Release also contained
a broad, reciprocal release of all claims by any of the partners against one
another, whether known or unknown.








Four days later, on July 5,
1994, Archer agreed to sell the Property to AEDC for $515,000, and the sale
closed a few days later on July 13.  When
Harris and Sterquell learned about the sale, they each demanded one-third of
the profits from the sale.  Archer
refused, and Harris and Sterquell sued Archer in Randall County, alleging among
other things that Archer breached his fiduciary duty.  That suit culminated in a judgment on a jury
verdict awarding Sterquell damages and a judgment notwithstanding the verdict
that Harris take nothing. 

On appeal, the Amarillo Court
of Appeals affirmed the judgment as to Sterquell after Sterquell accepted a
remittitur and reversed and rendered judgment for Harris awarding him the same
damages as Sterquell.[4]  Archer had argued, among other things, that
the broad release language in the Mutual Release barred Harris=s and Sterquell=s claims as
a matter of law, but the court of appeals disagreed, concluding that the Mutual
Release did not bar Harris=s and Sterquell=s claim that
Archer breached his fiduciary duty when he failed to disclose the AEDC offer to
purchase the Property.[5]


While the Randall County case
was pending, Archer, in various capacities,[6]
sued Harris in Wichita County (Harris=s place of residence).[7]  Archer=s claims were predicated on Harris=s purported sale of his interests to Branch.  At Harris=s request, the trial court abated this suit pending the outcome of the
Randall County action. 








After the Randall County
action became final, Harris moved for summary judgment on Archer=s two pending claims for breach of the covenant against encumbrances
and for money had and received.  One of
the grounds Harris asserted was that Archer=s claims were barred by the Mutual Release.  In response, Archer asserted, among other
things, that Harris was precluded from relying on the Mutual Release because of
Archer=s affirmative defenses of collateral estoppel and judicial
estoppel.  Without specifying the
grounds, the trial court granted summary judgment for Harris, and this appeal
followed.

Standard of Review








Citing the Mutual Release,
Harris=s motion for summary judgment asserted the affirmative defense of
release.[8]  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.[9]  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.[10]  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.[11]

Archer concedes that if the
Mutual Release is valid, it would bar all his claims.[12]  To avoid this result, Archer asserts that
Harris cannot use the Mutual Release as a defense in this action because of the
doctrines of collateral estoppel and judicial estoppel.  Like release, collateral estoppel and
judicial estoppel are affirmative defenses.[13]  Accordingly, we must review Archer=s summary judgment evidence to determine whether it raised a fact
issue as to each element of at least one of the defenses he asserted.[14]

Analysis








Collateral estoppel applies
when three elements are present:  (1) the
facts sought to be litigated in the second action were fully and fairly litigated
in the first action; (2) those facts were essential to the judgment in the
first action; and (3) the parties were in an adversarial posture in the first
action.[15]  The doctrine is designed to promote judicial
efficiency and to prevent inconsistent judgments by preventing re-litigation of
an ultimate issue of fact.[16]  When the party against whom collateral
estoppel is asserted had a full and fair opportunity to litigate the issue in
the prior suit, that party may not re-litigate the issue.[17]








Judicial estoppel bars a
party who has made a sworn statement in a pleading, a deposition, oral
testimony, or affidavit in a judicial proceeding from maintaining a contrary
position in a subsequent proceeding.[18]  The elements of judicial estoppel are (1) a
sworn, inconsistent statement made in a previous judicial proceeding; (2) the
party who made the statement successfully maintained the previous position; (3)
the previous statement was not made inadvertently or by mistake, fraud, or
duress; and (4) the statement was deliberate, clear, and unequivocal.[19]

Archer argues that Harris is
precluded from relying on the Mutual Release to defeat his claims because
Harris prevailed in the Randall County suit in part because Harris asserted
that the Mutual Release was invalid and because the validity of the Mutual
Release was fully and fairly litigated in the prior action, culminating in a
determination that the release was invalid. 
Harris responds that he did not challenge the validity of the Mutual
Release in the Randall County suit and that nothing in that suit estops Harris
from relying on the Mutual Release in defense against Archer=s claims in this action.  We
agree with Harris.








Harris claimed in the Randall
County suit that Archer owed him a fiduciary duty as his partner to reveal AEDC=s offer to purchase the Property before the parties entered into the
Mutual Release.[20]  Because Archer failed to do so, Harris
asserted claims for fraud and breach of fiduciary duty in the procurement of
the Mutual Release.[21]
If Harris prevailed on his contention that Archer fraudulently induced him to
enter into the Mutual Release, he had a choice:

[I]t
is well settled that one who is induced by fraud to enter into a contract has
his choice of remedies.  AHe
may stand to the bargain and recover damages for the fraud, or he may rescind
the contract, and return the thing bought, and receive back what he paid.@[22]

 

Upon the jury=s finding that Archer defrauded Harris, then, Harris could either
rescind the Mutual Release or Astand to the bargain@ by affirming the Mutual Release and recovering damages for Archer=s fraud in procuring it.[23]  Harris chose the latter.








Archer did not, and could
not, produce summary judgment evidence that the issue of the Mutual Release=s validity was adjudicated in the Randall County suit and that it was
held invalid, nor could Archer raise a fact issue that Harris deliberately,
clearly, and unequivocally asserted that the Mutual Release was invalid.  To the contrary, the court of appeals=s opinion in the Randall County suit establishes that Harris and
Sterquell did not disclaim the Mutual Release or seek to have it set
aside in that action but affirmed the Mutual Release=s validity by seeking to recover damages based on it.[24]  The court of appeals variously noted, for
example, that AHarris did
not seek rescission of the [Mutual Release]@;[25]
AHarris [did not] release[] his claims for breach of fiduciary duty
[against Archer] by execution of the [Mutual Release]@;[26]
and ASterquell [and Harris] did not disclaim or seek to set aside the
[Mutual Release]; [they] claimed damages because of the [Mutual Release=s] existence.@[27]

Thus, Harris=s Adeliberate,
clear, and unequivocal@ position
regarding the Mutual Release in the Randall County suit was that Archer
fraudulently induced him to sign the Mutual Release, not that the release was
invalid.  Accordingly, because the court
of appeals=s opinion
establishes that Harris did not try to have the Mutual Release declared
invalid, and certainly cannot be said to have Adeliberately, clearly, and unequivocally@ made a sworn statement that the release was not valid, judicial
estoppel does not apply.[28]








Similarly, Harris is not
collaterally estopped from obtaining summary judgment in this action based on
the Mutual Release.  There is nothing
inconsistent between the judgment in the Randall County suitCthat Harris and Sterquell shall recover damages from Archer for his
fraudulent inducement in procuring the Mutual ReleaseCand the trial court=s summary judgment in this action that the Mutual Release bars Archer=s claims.  Harris and Sterquell
did not elect to rescind the Mutual Release in the Randall County suit.  They chose to Astand by@ the Mutual
Release by recovering damages for having been fraudulently induced by Archer to
enter into it.[29]  Because the release was not found to be
invalid in the earlier suit, collateral estoppel does not preclude Harris from
arguing that the release bars Archer=s claims in this action.[30]

Conclusion

We, therefore, conclude that Harris was entitled to summary judgment
in this action based on the Mutual Release.[31]  We affirm the trial court=s judgment.

 

 

PER CURIAM

 

PANEL: 
CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DELIVERED:  December 4, 2008                               











[1]See Tex.
R. App. P. 47.4.





[2]Archer
filed suit in three different capacitiesBindividually, as Trustee of
the Richard K. Archer, M.D., P.A. Profit Sharing Plan & Trust, and as
personal representative of the Estate of Branch Archer.  Branch Archer, who passed away before this
suit was filed, was Richard Archer=s brother and shall be
referred to in this opinion as ABranch.@ 





[3]The
parties also entered into another settlement agreement that is not at issue in
this appeal. 





[4]Archer
v. Harris, 134 S.W.3d 411 (Tex. App.CAmarillo
2004, pet. denied).





[5]Id. at
430B34.





[6]See
supra n.2.





[7]Sterquell
has never been a party to the Wichita County action.





[8]See Tex.
R. Civ. P. 94.





[9]Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); see
Tex. R. Civ. P. 166a(b), (c).





[10]Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).





[11]IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004).





[12]After
quoting the release on page 2 of his brief, Archer states, AIf
this mutual release is valid, it would indeed bar [Archer=s]
claims.@





[13]See
Anadarko Petroleum Corp. v. Thompson, 94 S.W.3d 550, 553 (Tex.
2002); Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P., 235
S.W.3d 376, 383B84
(Tex. App.CDallas
2007, pet. dism=d).





[14]See
Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984) (AIf
the party opposing a summary judgment relies on an affirmative defense, he must
come forward with summary judgment evidence sufficient to raise an issue of
fact on each element of the defense to avoid summary judgment.@).





[15]See
Tex. Dep=t of
Public Safety v. Petta, 44 S.W.3d 575, 579 (Tex. 2001); Johnson
& Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 521
(Tex. 1998).





[16]See
Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex.
1994).





[17]See
Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 721 (Tex.
1990).





[18]See
Dallas Sales Co. v. Carlisle Silver Co., 134 S.W.3d 928, 930 (Tex.
App.CWaco
2004, pet. denied); Andrews v. Diamond, Rash, Leslie & Smith, 959
S.W.2d 646, 649 (Tex. App.CEl Paso 1997, writ denied).





[19]See
In re Estate of Loveless, 64 S.W.3d 564, 579B80
(Tex. App.CTexarkana
2001, no pet.) (citing Am. Sav. & Loan Ass'n v. Musick, 531 S.W.2d
581, 589 (Tex. 1975)); see also Dallas Sales, 134 S.W.3d at 930.





[20]Archer, 134
S.W.3d at 424.





[21]Id.





[22]Dallas
Farm Mach. Co. v. Reaves, 158 Tex. 1, 10, 307 S.W.2d 233, 238B39
(1957).





[23]See
id.; see also Foley v. Parlier, 68 S.W.3d 870, 882 (Tex. App.CFort
Worth 2002, no pet.) (A[I]n
a fraud case, the plaintiff can either claim rescission for fraud and get his
property back or he can sue for damages and affirm the transaction.@).





[24]134
S.W.3d at 434.





[25]Id. at
439.





[26]Id. at
446.





[27]Id. at
434.





[28]See
Dallas Sales, 134 S.W.3d at 930; Loveless, 64 S.W.3d
at 579B80; Andrews,
959 S.W.2d at 649.





[29]See
Reaves, 158 Tex. at 10, 307 S.W.2d at 238B39.





[30]See
Petta, 44 S.W.3d at 579; Sysco Food Servs., 890 S.W.2d at 801.





[31]Because
of our disposition of this issue, we need not address Archer=s
remaining issues.  See Tex. R.
App. P. 47.1.