George **HUMPHREY** and **Bob
Edwards,** Appellants,

v.

Jennifer **TAYLOR,** Appellee.

No. 12–82–0114–CV.

Court of Appeals of Texas,
Tyler.

July 19, 1984.

Rehearing Denied Aug. 16, 1984.

Brian E. Cutbirth, Whitten, Haag, Hacker, Hagin & Parker, Abilene, for appellants.

Roland G. Brown, Jacksonville, Tex., Robert Cady, Lawrence Sanger, Dallas, for appellee.

McKAY, Justice.

This is an appeal from a judgment rendered against appellants, George Humphrey (Humphrey) and Bob Edwards (Edwards), as intervenors In the Matter of the Marriage of Jennifer Taylor and Frank Taylor, in a suit on a promisory note in the principal amount of $40,000, executed by Frank Taylor to Humphrey and Edwards.

On June 4, 1981, Frank Taylor (Frank), while married to Jennifer Taylor (Jennifer), executed and delivered a promissory note in the principal amount of $40,000, payable to Humphrey and Edwards. The note was due and payable in full on July 4, 1981, together with interest at the rate of 10% per annum.

On July 23, 1981, Jennifer filed suit for divorce. The note was past due and payable at the time the divorce suit was filed.

On January 8, 1982, Humphrey and Edwards intervened in the divorce action between Jennifer and Frank in an attempt to collect the $40,000 note.

On February 18, 1982, Humphrey and Edwards were granted a default judgment against Frank in the 104th District Court of Taylor County, Texas, and amended their plea of intervention in this cause to plead the Taylor County judgment.

The divorce action was tried before the court. The divorce was granted and the community property was divided, but the court rendered a take nothing judgment against Humphrey and Edwards on their claim against Jennifer.

Pursuant to appellants' request the trial court made findings of fact and conclusions of law. The court found that Frank and Jennifer were husband and wife when the note was executed by Frank to Humphrey and Edwards; that Jennifer had no knowl-

edge of the note until she and Frank had separated; and that no proceeds of the note were ever received directly by Jennifer.

The trial court concluded that (1) Jennifer was not jointly liable to Humphrey and Edwards for the loan to Frank represented by the $40,000 note; (2) that neither the separate property of Jennifer nor the community property subject to her sole management, control and disposition was subject to execution in satisfaction of the judgment recovered by Humphrey and Edwards.

Appellant maintains that the trial court erred because (1) the note was a community obligation of both Frank and Jennifer because such funds were borrowed during marriage, and, as a matter of law, became a community obligation; (2) there was no finding that Humphrey and Edwards agreed to look only to the separate property of Frank for repayment of the note; (3) if there is a presumed finding that Humphrey and Edwards looked solely to the separate property of Frank, such finding is unsupported by any evidence; (4) the court failed to find that funds lent by Humphrey and Edwards were used for the joint benefit of Frank and Jennifer when such was established by the great weight and preponderance of the evidence; (5) the trial court failed to find that Jennifer implicitly consented to the borrowing of the funds by Frank in that the great weight and preponderance of the evidence establishes such finding; (6) the court failed to make a conclusion of law that such obligation was a joint obligation of Frank and Jennifer.

Jennifer testified that she was not aware that Frank borrowed $40,000 from Humphrey and Edwards, and that she learned about it when Edwards called her; that Frank managed whatever community property they owned during marriage; that she received money from Frank in 1981 for the home and family support, but she did not know where it came from; that she paid some of their household expenses from her own personal funds from her separate property; that after May 5, 1981, the amount she received from Frank would not exceed $2,000; that Frank deposited several large checks to her account in May and June, 1981, but each of them "bounced"; that she was unaware of any of Frank's business until the creditors called her; that after their separation Frank gave her $400; that she lived out of her own bank account; that she covered each of the checks that bounced out of her own funds; that when she separated from Frank on July 5, 1981, the rent payment of $1,750 was not current, and she paid it out of her own funds.

Frank testified that he borrowed $40,000 from Humphrey and Edwards "for personal use," and executed a note to them, and the money was used for car expense, notes, household expenses, "rent, car and stuff"; that Jennifer did receive benefits from this money; that he intended it used for himself and Jennifer; that he did not tell Humphrey and Edwards what he was borrowing the money for; that he owns nothing but two pistols; that he was president of Jenny Oil Co., but it had no assets; that some of the amounts paid directly or indirectly for the benefit of Jennifer came from the $40,000 loan; that he paid the majority of the rent and the majority of the car payments; that he used all of a $15,000 loan from a man named Gedney for the benefit of himself and Jennifer, and that he used part of the $40,000 to repay Gedney.

Humphrey testified that Frank told him and Edwards that he had some bills he had to pay, and he wanted to surprise Jennifer with being able to take care of it; that he "would be relying on the community estate, I imagine" to collect the note; that "I knew they were supposed to be fairly well off," and it was upon the reliance of the extent of their community estate that he loaned the money; that if he had known the truth about the cars (Frank had given three purported certificates of title on cars as security, but two did not exist) he would not have made the loan; that he knew very little about the community estate of the Taylors, and was not relying on who Jennifer was or what her family assets might be or anything of that nature, and was not aware

of her financial status might be until after the debt was not paid; he thought he learned of it before the debt was in default; that he was relying on Frank, car titles and trusting his friend Edwards because he did not anticipate "the loan would have to be collected"; that Jennifer never requested that he loan $40,000 to Frank; that he had no "intent as far as the estate was concerned except if it came time for collection I would try to collect it however I could"; "I would try to collect it against whatever property Frank Taylor had, whatever property he owned—I certainly would not have limited it to separate property."

Edwards testified that Jennifer said Frank gave her approximately $10,000 with which she paid bills, and he assumed it was from the loan.

■ It has long been held in Texas that debts contracted during marriage are presumed to be on the credit of the community, and they are obligations of the community unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction. *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex.1975); *Broussard v. Tian*, 156 Tex. 371, 295 S.W.2d 405, 406 (1956); *Wall v. Wall*, 630 S.W.2d 493, 496 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *Anderson v. Royce*, 624 S.W.2d 621, 623 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Brazos-Port Bank of Texas v. Robertson*, 616 S.W.2d 363, 366 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Inwood National Bank of Dallas v. Hoppe*, 596 S.W.2d 183, 185 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.).

■ There is no evidence and no finding in the record here that Humphrey or Edwards, who lent Frank money and took his note, agreed to look other than to Frank and the automobile title certificates for satisfaction of the debt. The proceeds of the note were never under the sole management and control of Jennifer.

Texas Family Code Ann. Sec. 5.61[1] provides in part:

(b) Unless both spouses are liable by other rules of law, the community property subject to a spouse's sole management, control, and disposition is not subject to:

. . . . .

(2) any nontortious liabilities that the other spouse incurs during marriage.

There is no claim by any party that "other rules of law" are applicable to this case.

The record indicates that Jennifer had no knowledge of the note transaction between Frank and Humphrey and Edwards until she was advised by telephone that the note was in default. There is no evidence that she took any action to ratify Frank's act or to acknowledge any liability. She did not participate in the transaction; she did not realize any gain from it. There is no evidence of assent, implied or expressed, to Frank's incurring the debt. The facts and circumstances will not support the conclusion that there is joint liability.

Judgment of the trial court is affirmed.

---

1.  References are to Texas Family Code Annotated unless otherwise noted.