Glenda I. FLETCHER, Appellant,

v.

NATIONAL BANK OF COMMERCE, Appellee.

No. 07–91–0227–CV.

Court of Appeals of Texas, Amarillo.

Feb. 5, 1992.

Harold L. Comer, Pampa, for appellant.

Phil N. Vanderpool, Pampa, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Glenda I. Fletcher (Fletcher) appeals from a partial summary judgment in favor of appellee National Bank of Commerce (Bank). The judgment decrees that Fletcher and her ex-husband, Charles C. Fletcher, are jointly and severally liable on a promissory note payable to the Bank. Charles C. Fletcher has not appealed from that judgment.

Fletcher and Charles C. Fletcher were divorced in September of 1989. In the judgment dissolving that marriage, Fletcher was adjudged jointly liable with her ex-husband on the note in question here. That judgment was appealed to, and affirmed by, this court.

The basis of the Bank's successful motion for summary judgment in this case, insofar as Fletcher is concerned, was that she was collaterally estopped from relitigating the issue of her joint liability on the note. Both the judgment of the trial court dissolving the Fletcher marriage and the opinion of this court affirming that judgment were included as exhibits to the motion.

This case involves the offensive use of collateral estoppel, *i.e.*, a plaintiff is seeking to estop a defendant from relitigating an issue which the defendant previously litigated and lost in a suit involving another party. This, of course, is different from a case involving the defensive use of collateral estoppel, *i.e.*, one where estoppel is claimed because a plaintiff has previously litigated and lost an issue against another defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552, 561 (1979).

In the *Parklane* case, the Court explicated several reasons why the two situations should be treated differently. Initially, the Court noted offensive use of collateral estoppel does not promote judicial economy in the same manner as does defensive use of the doctrine. Defensive use precludes a plaintiff from relitigating identical issues by merely switching adversaries and thus gives a plaintiff a strong incentive to join potential defendants in the first action if possible. *Id.* 439 U.S. at 329, 99 S.Ct. at 650.

However, offensive use creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by the judgment if the defendant wins, the Court commented, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. Thus, it concluded, offensive use of the doctrine will likely increase rather than decrease litigation since potential plaintiffs will have everything to gain and nothing to lose by intervening in the first action. *Id.* 439 U.S. at 330, 99 S.Ct. at 651.

The Court also noted that a second argument against the offensive use of the doctrine was that it might be unfair to a defendant and noted three specific instances in which that might be the case. First, if a defendant in the first action was sued for small or nominal damages, the defendant might have little or no incentive to defend vigorously, particularly if future suits were not foreseeable. Second, it might be unfair to a defendant if the judg-

ment relied upon as a basis for the estoppel was itself inconsistent with one or more judgments in favor of the defendant. Third, its application might be unfair where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result. *Id.* 439 U.S. at 330–31, 99 S.Ct. at 651.

In considering all of these factors, the Court concluded that the preferable approach in the federal courts was not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule it explicated was that in instances where the plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or, for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive estoppel. *Id.* 439 U.S. at 331, 99 S.Ct. at 651.

The *Parklane* decision concerned a federal question tried in federal courts and the Court explicated that the rule it created was to be applied in federal courts. However, its reasoning was so persuasive that in *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986), the Court stated:

> As to whether to allow collateral estoppel and issue preclusion based upon findings in a prior trial when a "Mary Carter" type agreement was present, we would leave to the trial court discretion in this area. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979). But in exercising that discretion, the trial court should consider certain fairness factors as outlined in Parklane Hosiery.

While the *Scurlock* Court, in its specific terminology, seemed to limit application of the *Parklane* rule to cases involving application of offensive collateral estoppel based upon findings in a prior trial where a "Mary Carter" type agreement was present, the clear implication of the case is that the rule should be applied in all cases involving the application of offensive collateral estoppel, whether or not a "Mary Car-

ter" type agreement is involved, and we so hold.

In stating the general rule when the use of offensive collateral estoppel should not be allowed, the *Parklane* Court referred to situations where the party seeking its application could easily have joined in the earlier action *or* for other reasons, its use might be unfair. In that connection, it might be argued that the *Parklane* Court, by its use of the disjunctive in stating the rule, intended an instruction that the doctrine not be applied in cases where the plaintiff could easily have joined in the earlier action. However, we do not agree with that interpretation.

Rather, we believe the Court intended ease of joinder to be merely one of the factors to be considered by a trial court in determining the basic question whether it would be fair to a defendant to apply offensive collateral estoppel. Our conviction that this is particularly true in Texas is strengthened by the *Scurlock* Court's admonition to consider the "fairness factors" outlined by the *Parklane* Court.

In *Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 563 (Tex.App.—Corpus Christi 1990, no writ), a retrial of the matter considered by the Supreme Court in the first *Scurlock* case, the court well summarized the rules and principles which should govern a trial court in deciding the applicability of the offensive use of collateral estoppel. In doing so, it listed them as:

(1) Whether use of collateral estoppel will reward a plaintiff who could have joined in the previous action but chose to "wait and see" in the hope that the first action by another plaintiff would result in a favorable judgment;

(2) Whether the defendant in the first action had the incentive to litigate the previous suit fully and vigorously;

(3) Whether the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result; and

(4) Whether the judgment in the first action is inconsistent with any previous decision.

We hold those rules and principles applicable in a case involving the use of offensive collateral estoppel, whether or not a "Mary Carter" type of agreement is involved.

It is established that a trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In the Court's words, "Another way of stating the test is whether the act was arbitrary or unreasonable." *Id.* at 242.

■ Reiterated, then, the general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where the application of offensive collateral estoppel would be unfair to a defendant, a trial court should not allow its use, and in making its decision whether or not to apply offensive collateral estoppel, that court should consider the four factors listed above.

■ Our decision must be whether the trial court abused its discretion in its application of offensive collateral estoppel in this case. The note in question reflects that it was made payable "upon demand, but if no demand is made, then on 11–7–1989." The divorce decree reflects that the case came on for hearing on September 26, 1989, and the divorce decree was signed on November 13, 1989. The divorce was effective upon the date of the signing of the decree rather than the date the cause came on to be heard. *Johnson v. Bond*, 540 S.W.2d 516, 519 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.).

A creditor may intervene in a divorce action subject to being stricken out by the court for sufficient cause on the motion of any party. Tex.R.Civ.P. 60; *see Humphrey v. Taylor*, 673 S.W.2d 954 (Tex. App.—Tyler 1984, no writ); *Wileman v. Wade*, 665 S.W.2d 519 (Tex.App.—Dallas 1983, no writ); *Broadway Drug Store of Galveston v. Trowbridge*, 435 S.W.2d 268 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ).

Although the instant note was due upon demand, appellee had not demanded its payment prior to the divorce hearing on September 26, 1989. Our opinion in the appeal of the divorce case reveals that a representative of appellee testified in that trial, so appellee did have notice of that proceeding and Fletcher's contest of her liability. However, no reason appears in the record why appellee should reasonably have demanded payment of the note prior to its maturity on November 7, 1989. While the divorce was not final prior to the latter date, the evidentiary hearing on the divorce had been completed, and it would have been within the discretion of the trial judge whether to have reopened the hearing if appellee had then attempted to intervene at that time. While appellee could have demanded payment of the note and intervened in the divorce case, considering all of the above circumstances, the trial judge in this case could have reasonably concluded that this was not a situation where appellee simply decided to "wait and see" its result, thereby impeding judicial efficiency.

Additionally, the record also shows that Fletcher had the incentive to, and did, vigorously litigate the question as to her liability on the note, contending that her ex-husband was solely liable on it. The instant action did not afford Fletcher any procedural opportunities unavailable in the divorce suit that could readily cause a different result, nor is the judgment in that divorce suit inconsistent with any previous decision.

In making our decision as a reviewing court, we are cautioned by the *Downer* Court that the mere fact that a trial judge might decide a matter in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d at 242.

Viewed in the light in which we must view it, the record is not sufficient to show that the trial court abused its discretion in applying offensive collateral estoppel. That being so, we must overrule Fletcher's point of error.

Accordingly, the judgment of the trial court is affirmed.