

# NUMBER 13-22-00127-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

HOWARD ADAMS,                                                          Appellant,

v.

MICHELLE CAROL ATKINSON,
AS INDEPENDENT EXECUTOR OF
THE ESTATE OF J.W. MASSEY,                                          Appellee.

## ON APPEAL FROM THE 130TH DISTRICT COURT
## OF MATAGORDA COUNTY, TEXAS

# NUMBER 13-22-00128-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF J.W. MASSEY, DECEASED

## ON APPEAL FROM THE COUNTY COURT
## OF MATAGORDA COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria

In this consolidated case, appellant Howard Adams appeals from the trial court's order granting summary judgment in favor of appellee Michelle Carol Atkinson, independent executor of the estate of J.W. Massey. Adams also appeals the trial court's subsequent order transferring the case to the probate court. By what we construe as two issues, Adams contends the trial court erred by: (1) granting summary judgment, and (2) transferring the case to the probate court. We affirm.

## I.    BACKGROUND

Because summary judgment was granted on Atkinson's claim of res judicata and collateral estoppel, there are two proceedings that are relevant to our analysis. We detail

the background of the original case and the instant case.[1]

In October 2004, Massey, Adams, and Lynn J. Klement formed Valley Dewatering Services, Inc. (VDSI), a business that processes sewer and grease trap waste. In January 2005, Massey, Adams, and Klement were each issued 1,000 shares of VDSI stock, and they each signed an undated stock purchase agreement (Agreement). The Agreement governed how the shareholders could sell their VDSI stock.

On December 22, 2015, Klement sued VDSI, Massey, and Adams in the 23rd District Court of Matagorda County, trial court cause number 15-H-0580. According to Klement's original petition, Klement attempted to sell his 1,000 shares of VDSI stock to Massey in the summer of 2015, but Adams objected to the sale, asserting that it violated the Agreement. As a result of Adams's objection, "the sale was rescinded." Citing § 21.102 of the Texas Business Organizations Code, Klement averred that the Agreement was silent on its duration and no longer valid after January 2015. *See* TEX. BUS. ORGS. CODE ANN. § 21.102 ("Any limit on the term or duration of a shareholders' agreement under this subchapter must be set forth in the agreement. A shareholders' agreement under this subchapter that was in effect before September 1, 2015, remains in effect for 10 years, unless the agreement provides otherwise."). Accordingly, Klement sought a declaratory judgment that the Agreement was "no longer enforceable against [Klement], and that he can sell his stock without restriction." Klement also stated in his petition that "[TEX. CIV. PRAC. & REM. CODE ANN. §] 37.004 provides that an interested person may have a question of validity of a contract determined by a Court" and that he

---

[1] We derive the background of the first proceeding from the various court documents and summary judgment evidence in the second proceeding.

had "complied with all the conditions precedent to obtaining a judgment declaring the . . . Agreement invalid."

On February 4, 2016, Klement filed a motion for summary judgment. *See* TEX. R. CIV. P. 166a. In the "Basis of Motion" section, Klement stated, "This suit seeks a declaratory judgment from the Court regarding whether [the Agreement] is currently enforceable. [Klement] believes that the evidence shows that the Agreement ended in January 2015, and is no longer enforceable based upon [§] 21.102 of the TEX. BUS. ORG. CODE." Klement reiterated his petition's assertion that the Agreement contained no provision regarding its duration. In the "Conclusion" section of his motion, Klement argued there were no questions of fact for a jury to decide in the case, that the Agreement expired in January 2015, that he was "free to sell his stock to Massey at any price that can be agreed upon," and that the court should enter judgment finding the Agreement unenforceable. Klement stated in the motion that he was relying on the following evidence in support: "the Stock Purchase Agreement, attached as Exhibit 'B' to the affidavit of . . . Klement," "the affidavit of . . . Klement, which authenticates Exhibit 'B,'" and "TEX. BUS. ORG. CODE[ §] 21.102."[2]

On March 7, 2016, Adams filed a response to Klement's summary judgment motion. In his response, Adams argued that Klement's affidavit did not comply with the requirement that an affidavit of an interested party must be "clear, positive and direct" and must be able to be "readily controverted." *See Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.) ("An affidavit of an interested party may

---

[2] Klement's summary judgment evidence is not included in the appellate record of this cause.

4

serve as competent summary judgment proof so long as such affidavit evidence is clear, positive, direct, credible, free from contradiction, and susceptible of being readily controverted"). Adams averred that Klement's affidavit did not provide "any specific date upon which the . . . Agreement was allegedly signed by stock holders." However, Adams acknowledged that the affidavit stated the following: "The initial meeting of the Shareholders of VDSI was held in January 2005 at the corporate office in Van Vleck, Texas. [Shortly thereafter,] the shareholder's agreed that a[n] . . . Agreement should be entered into by VDSI" and that "[i]n January 2005, the Board of Directors executed a unanimous written consent in lieu of holding a meeting to approve of the . . . Agreement that had been approved and signed by all (3) shareholders." Adams further argued that the Agreement was undated and therefore presented a material question of fact on its face as to whether the Agreement was still in effect pursuant to § 21.102 of the business organizations code.

On the same day, VDSI and Massey filed a joint response to Klement's summary judgment motion, by which they agreed "as a matter of law the . . . Agreement referenced in [Klement's] Original Petition is no longer valid" and indicated they did not oppose the declaratory relief sought by Klement.

On March 14, 2016, the 23rd District Court signed its order granting Klement's request for summary judgment. The order stated, "Summary Judgment should be GRANTED to [Klement] for the declaratory relief requested." The order also stated:

> IT IS ORDERED that the . . . Agreement of [VDSI] is no longer enforceable as to the shares of stock owned by [Klement], and IT IS ORDERED that [Klement] can sell his stock in [VDSI] without the restrictions contained in the . . . Agreement.

All relief not granted herein is denied.

This is a final and appealable judgment.

Adams did not appeal the 23rd District Court's order granting summary judgment. Subsequently, Massey purchased Klement's 1,000 shares of VDSI stock and then sold 10 shares to Justin Atkinson.

Massey passed away on November 11, 2020. Michelle filed an application to probate Massey's will and for issuance of letters testamentary on November 20, 2020, in the Matagorda County Court (probate court), trial court cause no. PR20-0144. The probate court signed its "Order Probating Will and Authorizing Letters Testamentary" on December 11, 2020, which also appointed Michelle, in accordance with Massey's will, as independent executor of Massey's estate.

Sometime after Massey died, Adams sent a demand letter to Justin, who was then the Vice President of VDSI, and claimed he had a right under the Agreement to purchase the large majority of Massey's stock. Adams then filed suit against VDSI in Hidalgo County seeking to force it to sell him shares owned by Massey at his death. However, Adams did not sue Michelle, who had possession of Massey's shares as independent executor of Massey's estate.

On April 22, 2021, Michelle filed her original petition for declaratory judgment against Adams in the probate proceeding. According to her petition, Michelle sought a judgment declaring the Agreement unenforceable against Massey's estate and requested the matter be transferred to district court.

On June 14, 2021, Adams filed his "Answer, Motion to Transfer Venue and Plea in Abatement," seeking to transfer the case to Hidalgo County. On July 27, 2021, Michelle

6

filed her "Motion to Transfer Contested Case to District Court." On July 30, 2021, the probate court signed its "Order Granting Motion to Transfer Contested Case to District Court." Michelle's declaratory judgment action was transferred to the 130th District Court of Matagorda County (trial court).

On October 18, 2021, Michelle filed her first amended petition for declaratory judgment. On November 5, 2021, Michelle filed her motion for summary judgment. In her motion, Michelle cited § 21.102 of the Texas Business Organizations Code and argued that the Agreement was no longer in effect after January 2015 because it was silent regarding its duration—mirroring Klement's claims in the prior proceeding. Michelle also argued that Adams's claims to enforce the Agreement were barred by res judicata and collateral estoppel due to the 23rd District Court's March 2016 judgment in Klement's prior suit. As part of her motion, Michelle attached several documents, including an affidavit by Klement, Klement's original petition and motion for summary judgment, Adams's response to Klement's summary judgment motion, and the 23rd District Court's order granting Klement's summary judgment motion and request for declaratory relief. Michelle averred that there were no questions of fact for a jury to decide and requested the trial court to enter judgment finding the Agreement unenforceable.

On November 29, 2021, Adams filed his response to Michelle's summary judgment motion, arguing, among other things, that the Agreement contained "limits and/or terms as to its duration" and that Michelle did not satisfy the required elements of res judicata and collateral estoppel. Michelle filed a reply to Adams's response on December 2, 2021. On December 20, 2021, Michelle filed a response and supplemental response to Adams's motion to transfer venue. On February 2, 2022, the trial court signed orders denying

7

Adams's motion to transfer venue and plea in abatement.

On February 2022,[3] the trial court signed its "Order Granting Motion for Summary Judgment," which provided the following:

> The Court finds that summary judgment should be granted because [Michelle] has established that [Adams] is barred as a matter of law from enforcing the . . . Agreement regarding stock in . . . VDSI . . . by res judicata and collateral estoppel based upon the judgment of the 23[rd] Judicial District Court rendered on March 14, 2016 in Cause No. 15-H-0580. The Court further finds that the summary judgment evidence established the . . . Agreement that forms the basis of [Adams's] claims expired in January 2015 and is no longer enforceable against the stock currently owned by the Estate of J.W. Massey.
>
> IT IS ORDERED that the . . . Agreement . . . is not enforceable against the shares of stock in VDSI owned by J.W. Massey at the time of his death.
>
> IT IS FURTHER ORDERED that . . . Michelle . . . may transfer ownership of the 1990 Shares of VDSI stock that is an asset of the Estate of J.W. Massey according to the Will of J.W. Massey in PR20-0411.
>
> IT IS FURTHER ORDERED that the Court will consider [Michelle's] Application for Attorney's Fees by separate submission.

On March 22, 2022, the trial court signed its "Order to Transfer Back to County Court," which provided the following:

> This court has heard and entered orders resolving all contested matters presented. Additionally, the court finds that this case should be transferred to the County Court of Matagorda County to finalize any outstanding probate matters.
>
> IT IS THEREFORE ORDERED that this Court, or the clerk hereof, shall immediately transfer this matter to the County Court of Matagorda County under its original cause number of PR20-0144; In [t]he Estate of J.W. Massey, Deceased.

---

[3] The order was dated February 2022 by the trial court, but file-stamped on February 17, 2022 by the clerk of the trial court.

The trial court's orders were also placed into the record of the proceeding in the probate court. These appeals ensued.[4]

## II. APPELLATE JURISDICTION

On April 19, 2022, this Court notified the parties that we questioned whether or not the trial court's order granting summary judgment was final, potentially affecting our jurisdiction. We also acknowledged that Adams appeared to be appealing the trial court's transfer order. We ordered Adams to file a letter brief to identify authority that clearly establishes this Court's jurisdiction to review either or both orders. We also notified Michelle that she could file a response. The parties filed short letter briefs—Adams asserted we have jurisdiction, and Michelle suggested we did not—and re-urged their respective positions regarding the jurisdictional issue in their appellate briefs.

We must review sua sponte issues affecting our appellate jurisdiction. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam). Appeals may be taken only from final judgments unless a statute or rule allows an interlocutory appeal. *Lehmann v. Har Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). "A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Id.* at 195. Although courts presume that a judgment following a trial on the merits is final, "there is no such presumption of finality following a summary judgment or default judgment." *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829 (Tex. 2005) (orig. proceeding) (citing

---

[4] Adams filed two notices of appeal, one stemming from the trial court—which corresponds to appellate cause number 13-22-00127-CV—and the other stemming from the probate court—which corresponds to appellate cause number 13-22-00128-CV. In each notice, Adams sought to appeal the trial court's "judgment dated March 22, 2022"—the trial court's transfer order—"as well as all prior orders merged therein, including the undated Order Granting Summary Judgment."

9

*Lehmann*, 39 S.W.3d at 199–200). "When there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of all claims and all parties or unless it clearly and unequivocally states that it finally disposes of all parties and all issues." *Lehmann*, 39 S.W.3d at 205.

"A final order issued by a probate court is appealable to the court of appeals." TEX. EST. CODE ANN. § 32.001(c). Probate proceedings are an exception to the "one final judgment" rule; in such cases, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Lehmann*, 39 S.W.3d at 192. However, not every interlocutory order in a probate case is appealable. *See De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). If a court's order resolves a discrete issue in the probate proceedings, then that order is deemed to be a final order from which appeal may be taken, even if the order does not dispose of all pending parties and claims. *See Lehmann*, 39 S.W.3d at 195. To determine whether an order is final on this basis, we first consider whether there is a statute specifically declaring the type of order to be the end of a particular phase of proceedings under the Estates Code. *See De Ayala*, 193 S.W.3d at 578–79. If there is such a statute, then that statute controls; if not, an order is final if it disposes of all parties and all issues in a particular phase of the probate proceedings of which the order logically may be considered a part. *See id.*

Entitled "Jurisdiction of Contested Probate Proceeding in County with No Statutory Probate Court or Statutory County Court," § 32.003 of the Estates Code provides in relevant part:

> (a) In a county in which there is no statutory probate court or county court at law exercising original probate jurisdiction, when a matter in a probate proceeding is contested, the judge of the county court may, on the judge's

10

own motion, or shall, on the motion of any party to the proceeding, according to the motion:

. . . .

(2) transfer the contested matter to the district court, which may then hear the contested matter as if originally filed in the district court.

. . . .

(f) A district court to which a contested matter is transferred under this section has the jurisdiction and authority granted to a statutory probate court by this subtitle. On resolution of a contested matter transferred to the district court under this section, including any appeal of the matter, the district court shall return the matter to the county court for further proceedings not inconsistent with the orders of the district court or court of appeals, as applicable.

TEX. EST. CODE ANN. § 32.003(a), (f).

While § 32.003 is the mechanism by which Michelle's declaratory judgment action was transferred to the trial court,[5] we have found no statute specifically declaring the orders at issue in this case to be the end of a particular phase of proceedings under the Estates Code. *See De Ayala*, 193 S.W.3d at 578–79. Thus, to determine whether the orders are final and appealable under the probate exception to the general rule for determining finality, we must determine (1) if there is a particular phase of the probate proceedings of which the orders logically may be considered a part, and (2) if, in the orders, the trial court disposed of all parties and all issues in this phase. *See id.* To make

---

[5] The parties do not dispute that Michelle's declaratory judgment action was contested prior to entry of the county court's "Order Granting Motion to Transfer Contested Case to District Court." Michelle's original petition for declaratory judgment and Adams's answer demonstrate that the parties are claimants to a specific asset of Massey's estate—the VDSI stock—and that there is a bona fide controversy between them concerning that asset. *See Sivley v. Sivley*, 972 S.W.2d 850, 856 (Tex. App.—Tyler 1998, no pet.) (holding that a probate matter is contested when the pleadings include "sufficient facts to show some reasonable grounds for the belief that there are two or more parties or claimants to assets of an estate and there is a bona fide controversy between them concerning those assets," or stated otherwise, when "the pleadings on file demonstrate that the parties to the suit have adopted adversary positions").

11

this determination, we examine the live pleadings contained in the record. *See Gruss v. Gallagher*, 680 S.W.3d 642, 651 (Tex. App.—Houston [1st Dist.] 2023, no pet.)

Michelle's amended petition for declaratory judgment not only sought declaratory relief but also requested attorney's fees. The trial court's order granting Michelle's motion for summary judgment disposed of Michelle's claim for declaratory relief but specifically stated that Michelle's "Application for Attorney's Fees" would be considered "by separate submission." We assume that the adjudicated claim for declaratory relief is a particular "phase" of the probate proceedings of which the order granting summary judgment logically may be considered a part. *See De Ayala*, 193 S.W.3d at 578–79. However, the order granting summary judgment did not dispose of all parties and all issues within that "phase." It is well established that an order that does not dispose of all pending claims, including attorney's fees, is not a final order. *See Farm Bureau Cnty Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 164 (Tex. 2015); *McNally v. Guevara*, 52 S.W.3d 195, 195 (Tex. 2001) (per curiam); *see also Melton v. CU Members Mortg.*, 586 S.W.3d 26, 36 (Tex. App.—Austin 2019, pet. denied) (concluding that "the remaining issue of attorney's fees" rendered judgment interlocutory rather than final).

Nevertheless, when a final judgment resolves all claims in a case, any previous interlocutory judgment or order is merged into that final judgment. *See, e.g., Parking Co. of Am. v. Wilson*, 58 S.W.3d 742, 742 (Tex. 2001); *Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972); *OHK Global, Inc. v. Motaghi*, 679 S.W.3d 738, 742 (Tex. App.—Houston [1st. Dist.] 2023, pet. denied) (first citing *Clarendon Nat'l Ins. Co. v. Thompson*, 199 S.W.3d 482, 492 (Tex. App.—Houston [1st. Dist.] 2006, no pet.); and then citing *Lehmann*, 39 S.W.3d at 200, 204)) ("[A] partial summary judgment or other order that

12

does not dispose of the entire case becomes final when the trial court subsequently enters an order that disposes of all remaining parties and claims in the case."); *Radelow–Gittens Real Prop. Mgmt. v. Pamex Foods*, 735 S.W.2d 558, 560 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) ("Interlocutory judgments by the trial court are merged into the final judgment and thus become final for purposes of appeal, whether or not the interlocutory judgment is specifically named within the final judgment.").

Here, the trial court's transfer order stated, "This court has heard and entered orders resolving all contested matters presented. Additionally, the court finds that this case should be transferred to the [probate court] to finalize any outstanding probate matters." The record contains no order granting or denying Michelle's claim for attorney's fees. Thus, the record does not support the transfer order's recitation that the trial court "heard and entered orders resolving all contested matters." However, "a clear and unequivocal statement of finality must be 'given effect' even if review of the record would undermine finality." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam) (citing *Lehmann*, 39 S.W.3d at 206).

On January 25, 2024, we abated both appeals and ordered the trial court to address whether it intended its transfer order to completely dispose of all claims and all parties. On February 1, 2024, the trial court entered findings by which the trial court confirmed that it had intended to render a final judgment when issuing its transfer order:

**FINDINGS**

1.  The Order Granting Motion for Summary signed by the trial court did not resolve all issues. The issue of Michelle Atkinson's attorney[']s fees was left open for the party to present a motion by submission.

13

2. The trial court waited thirty-three days for further information before sending the case back to the Probate Court. *The trial court intended the order to be final* based on the belief that the party had not moved forward with the submission of her attorney[']s fee request.

3. Through review of the Clerk's record, it does not appear that the parties were notified of the signing of the Summary Judgment, only the transfer order signed later.

4. The parties did not have the time to submit information regarding attorney['s] fees as the trial court previously believed.

(Emphasis added). Thus, the trial court found, in no uncertain terms, that its transfer order was intended to be a final judgment.

We conclude that the trial court's findings are a clear indication that it intended the transfer order to completely dispose of all issues in this "phase" of the probate proceeding. *See Lehmann*, 39 S.W.3d at 205 (holding that "there must be some other clear indication that the trial court intended [an] order to completely dispose of [an] entire case" for purposes of finality); *De Ayala*, 193 S.W.3d at 578–79. Therefore, the trial court's order granting summary judgment became final through merger, and we may exercise jurisdiction under the probate exception to the one judgment rule. *See Lehmann*, 39 S.W.3d at 192; *Parking Co. of Am.*, 58 S.W.3d at 742; *Webb*, 488 S.W.2d at 408–09; *OHK Global, Inc.*, 679 S.W.3d at 742; *Radelow–Gittens Real Prop. Mgmt.*, 735 S.W.2d at 560.

### III.    SUMMARY JUDGMENT

Adams raises three sub-issues in connection to his challenge of the trial court's grant of Michelle's summary judgment motion. In his first sub-issue, Adams argues that the trial court erred in finding that his claims were barred by the 23rd District Court's judgment due to collateral estoppel. Similarly, in his second sub-issue, Adams argues

14

that the trial court erred in finding that his claims were barred by the 23rd District Court's judgment due to res judicata. In his third sub-issue, Adams argues that the trial court erred in finding that the Agreement expired in 2015 and was no longer in effect or enforceable against Massey's estate.

## A.      Standard of Review & Applicable Law

A movant for traditional summary judgment has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). If the movant meets its burden, "the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the non-movant produces more than a scintilla of evidence to raise a fact issue on the challenged elements, then summary judgment is improper. *Amedisys*, 437 S.W.3d at 511; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

We review summary judgments de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). The evidence is viewed in the light most favorable to the non-movant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). When, as here, a trial court grants summary judgment on a specific ground, we should consider all summary judgment grounds that the trial court ruled on, are preserved for review, and are necessary for a final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996).

## B.      Collateral Estoppel

The preclusive effect of a judgment involves two related but distinct concepts:

15

claim preclusion and issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). While federal courts refer to these doctrines collectively as "res judicata," *id.*, most Texas cases generally use the term "res judicata" when referencing and applying claim preclusion and use the term "collateral estoppel" when referencing and applying issue preclusion. *See J-W Power Co. v. Sterling Cty Appraisal Dist.*, 691 S.W.3d 466, 471–72 (Tex. 2024); *Wilson v. Fleming*, 669 S.W.3d 450, 456 (Tex. App.—Houston [1st Dist.] 2021) *aff'd on other grounds*, 649 S.W.3d 186 (Tex. 2024).

The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in a prior suit. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 801 (Tex. 1992); *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex. 1988). "The term 'ultimate issue' does not refer to a cause of action or a claim." *Tarter*, 744 S.W.2d at 928; *see also Haddock v. Gruber*, No. 05-16-01113-CV, 2018 WL 1417453, at *8 (Tex. App.—Dallas Mar. 22, 2018, pet. denied) (mem. op.). Collateral estoppel applies when the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior suit and lost. *See Quinney Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex. 1999); *Tarter*, 744 S.W.2d at 927. Collateral estoppel is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding relitigation of issues. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994).

Collateral estoppel can be applied offensively or defensively. *Mann v. Old Republic Nat'l Title Ins. Co.*, 975 S.W.2d 347, 351 n.5 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Offensive collateral estoppel is used by a plaintiff "seeking to estop a defendant from relitigating an issue which the defendant previously litigated and lost in a suit

16

involving another party." *Fletcher v. Nat'l Bank of Com.*, 825 S.W.2d 176, 177 (Tex. App.—Amarillo 1992, no writ). Defensive collateral estoppel is the opposite—that is, the defendant asserts collateral estoppel as an affirmative defense because the plaintiff previously litigated the issue and lost. *Id.* In the present context, Michelle applied collateral estoppel offensively in her summary judgment motion. *See Mann*, 975 S.W.2d at 351 n.5

To invoke collateral estoppel successfully, a party must establish the following elements: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990); *Mann*, 975 S.W.2d at 350. Whether collateral estoppel applies is a question of law for the court to decide. *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 870 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Adams only challenges the first and second elements of collateral estoppel in this sub-issue. *See Eagle Props., Ltd.*, 807 S.W.2d at 721; *Mann*, 975 S.W.2d at 350.

To determine whether the facts were fully and fairly litigated in the first suit, we consider "(1) whether the parties were fully heard, (2) that the court supported its decision with a reasoned opinion, and (3) that the decision was subject to appeal or was in fact reviewed on appeal." *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991); *Cole v. G.O. Assocs., Ltd.*, 847 S.W.2d 429, 431 (Tex. App.—Fort Worth 1993, writ denied). To determine whether a fact issue is essential to the judgment, i.e., whether it is an "ultimate issue," we look to the factual determinations made by the trier of fact that are "necessary to form the basis of a judgment." *Tarter*, 744 S.W.2d at 928.

Klement's summary judgment motion in the first action stated that his suit sought

17

"a declaratory judgment . . . regarding whether [the Agreement] is currently enforceable. [Klement] believes that the evidence shows that the Agreement ended in January 2015, and is no longer enforceable based upon [§] 21.102 of the TEX. BUS. ORG. CODE." In his motion, Klement argued that the Agreement contained no provision regarding its duration, and consequently, the Agreement expired in January 2015 and he was "free to sell his stock to Massey at any price that can be agreed upon." Klement's motion further requested that the district court enter judgment finding the Agreement unenforceable. In his brief, Adams agrees that the parties addressed "the issue of the Agreement's validity in 2015," but argues that the issue "was decided specifically in the context of the sale of Klement's stock only and while he was *still alive*," points out provisions of the Agreement governing the sale of stock upon death of a shareholder, and declares that "the factual scenario, and the rights and obligations of the parties[] and the corporation, differed in Klement's prior suit" in comparison to the instant case. We disagree.

The record is clear that Klement's summary judgment motion did not involve a claim regarding the validity of any specific provision of the Agreement governing the sale of shares by shareholders, alive or dead. Rather, Klement's claim in his summary judgment motion asserted that the *entire* Agreement was unenforceable because it had expired in January 2015 pursuant to Texas Business Organizations Code. *See* TEX. BUS. ORG. CODE ANN. § 21.102. In raising this claim, Klement alleged that the Agreement was entered into in January 2005 and silent as to its duration. The enforceability of the Agreement as a whole, therefore, was the legal conclusion drawn from the district court's finding on the ultimate issues—the date the Agreement became effective and whether it contained any provisions governing its duration. In his written response to Klement's

18

summary judgment motion, Adams argued that Klement's attached affidavit—wherein Klement attested that the Agreement was entered into in January 2005—was defective. Adams also argued that the Agreement itself was undated and therefore presented a material question of fact regarding whether the Agreement was still in effect pursuant to the Texas Business Organizations Code. *See id.* § 21.102. Accordingly, the record indicates that the parties were fully heard on the ultimate issues. *See Mower*, 811 S.W.2d at 562.

Adams further argues that the 2016 judgment did not address "its application to the facts and issue presented here: the right of a surviving shareholder to purchase the stock of another shareholder who signed the original Agreement upon that shareholder's death." Adams also states that Michelle failed to show that the district court's 2016 judgment was supported by a well-reasoned opinion "on the specific issue and factual context present here." We again find Adams's arguments unavailing. The district court's judgment stated that, "Summary Judgment should be GRANTED to [Klement] for the declaratory relief requested." As noted above, Klement's summary judgment motion expressly sought "a declaratory judgment . . . regarding whether [the Agreement] is currently enforceable" and never raised any claims regarding the validity of any specific provision of the Agreement governing the sale of shares by shareholders, alive or dead.[6]

Adams also points out that the 2016 judgment did not express the basis of the district court's ruling. However, as noted above, the enforceability of the Agreement in its

---

[6] The district court's judgment also stated that "the . . . Agreement . . . is no longer enforceable as to the shares of stock owned by [Klement]," and that "[Klement] can sell his stock in [VDSI] without the restrictions contained in the . . . Agreement." We do not conclude that this language is a limitation on the district court's grant of Klement's request for summary judgment and declaratory relief, which we have construed as a request seeking a judgment declaring the Agreement wholly unenforceable.

19

entirety was the legal conclusion drawn from the district court's findings on the ultimate issues—the date the Agreement became effective and whether it contained any provisions governing its duration. These findings, though implied, were essential to the judgment. *See Eagle Props., Ltd.*, 807 S.W.2d at 721; *Tarter*, 744 S.W.2d at 928. Accordingly, we find that the district court supported its decision with a reasoned opinion regarding the enforceability of the entire Agreement, that decision was final, and was subject to appeal. *See Mower*, 811 S.W.2d at 562.

We conclude that Michelle established the challenged elements of collateral estoppel. *See Eagle Props., Ltd.*, 807 S.W.2d at 721; *Mann*, 975 S.W.2d at 350. Consequently, Michelle established that no genuine issue of material fact existed regarding the application of collateral estoppel and was entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Amedisys, Inc.*, 437 S.W.3d at 511. Because Adams failed to raise a genuine issue of material fact, the trial court did not err in entering summary judgment based on collateral estoppel. *See Lujan*, 555 S.W.3d at 84. Consequently, because summary judgment was proper on the ground of issue preclusion, we need not address whether it was proper on the other two grounds Adams challenges in this second and third sub-issues. *See* TEX. R. APP. P. 47.1; *Cincinnati Life Ins. Co.*, 927 S.W.2d at 625–26. We overrule Adams's first issue.

## IV. TRANSFER ORDER

In his second issue, Adams requests that we reverse the trial court's order transferring the proceeding back to the county court in the event we decided that summary judgment was erroneously granted in Michelle's favor. Because we have affirmed the trial court's grant of summary judgment, we need not address Adams's second issue. *See*

20

TEX. R. APP. P. 47.1.

## V. CONCLUSION

The trial court's judgment is affirmed.

NORA L. LONGORIA
Justice

Delivered and filed on the
31s day of October, 2024.